[No. 41293-4-II.    Division Two.    February 28, 2012.]

RICHARD GERMEAU, *Appellant*, v. MASON COUNTY ET AL.,
*Respondents*.

791

Greg Overstreet and Christopher Roslaniec (of Allied Law Group LLC), for appellant.

John E. Justice (of Law Lyman Daniel Kamerrer & Bogdanovich PS), for respondents.

¶1 HUNT, J. — Richard Germeau appeals the superior court's summary judgment rulings (1) that he lacked standing to bring a Public Records Act (PRA)[1] action against Mason County and the Mason County's Sheriff's Office (Sheriff's Office); and (2) that even if he did have standing, his letter to the Sheriff's Office did not provide fair notice that the letter was a PRA request. Germeau argues that (1) although he requested documents in his capacity as the Mason County Sheriff's Office Employees Guild (Guild) representative, he nevertheless had standing to bring the PRA action;[2] and (2) his letter provided fair notice to the County that it was a PRA request. Holding that Germeau had standing to bring this PRA action, we nevertheless affirm the superior court's summary judgment dismissal of his action on alternative grounds—that Germeau's letter

---

[1] Ch. 42.56 RCW.

[2] Mason County contends that the Guild itself, not Germeau personally, should have brought the PRA action.

did not provide fair notice to Mason County that his letter was a request for documents under the PRA.

## FACTS

### I. RECORDS REQUEST BACKGROUND

¶2 At the time of the events in this case, Mason County Deputy Sheriff Richard Germeau was the representative of the Guild, which has a collective-bargaining agreement with Mason County.[3] In 2008, Germeau signed and dated a "Verification of Receipt" acknowledging his receipt of a Mason County Sheriff's Office general order that adopted Mason County's public records requests policy, which states, in part:

> (a) Public records may be inspected and/or copies may be obtained under the following procedures:
>
> > 1. Requests for public records should be in writing and directed to the designated public records officer and should include the following information:
> >
> > . . . .
> >
> > (C) *A clear indication that the document is a "Public Records Request."*

Clerk's Papers (CP) at 187 (emphasis added). In addition, the Sheriff's Office has its own "Public Disclosure" web page,[4] which contains a link to the Sheriff's Office's "Public Records Request Form."[5]

---

[3] Collective Bargaining Agreement By and Between Mason County and Mason County Sheriff's Office Employees Guild (Sept. 16, 2010-Dec. 31, 2012), *available at* http://www.co.mason.wa.us/human_resources/bargain_agreements/deputy_sheriffs.PDF.

[4] CP at 200-01 (printouts dated August 11, 2010, of web page screen shot); *Public Disclosure*, MASON COUNTY SHERIFF'S OFFICE, http://so.co.mason.wa.us/index.php?id=96,0,0,1,0,0 (last visited Feb. 7, 2012).

[5] CP at 202-03 (printout of public records request form); http://so.co.mason.wa.us/documents/PublicRecordsRequestForm.pdf (form itself).

## A. Germeau's Previous Public Records Requests

¶3 Before the events that gave rise to the instant action, Germeau made a public records request to Mason County (not the Sheriff's Office) dated February 13, 2009, using the "Mason County Public Records Request Form,"[6] seeking "all records/documents, all tests, all score sheets/tally sheets related to the Mason County Sherriff[']s Office sergeant[']s exam intact in its original form." CP at 246. Germeau had also made other public records requests to "other County departments (other than the Sheriff's Office) such as the Civil Service Commission and another County department regarding the purchase of a building." CP at 30-31. Germeau also used the Mason County Public Records Request Form for these requests. CP at 30, 246.

## B. Germeau's August 13 Letter to Sheriff Concerning Borcherding Investigation

¶4 On August 9, 2009, guild member Mason County Sheriff's Detective Sergeant Martin Borcherding, who was off-duty at the time, was allegedly involved in a physical altercation at a bar and a domestic dispute with his girl friend, neither of which resulted in criminal charges. Nevertheless, according to Borcherding, Chief Deputy Russell Osterhout advised Borcherding that the Sheriff's Office had opened an internal affairs investigation of his role in these incidents. In his capacity as Borcherding's guild representative, Germeau wrote a letter dated August 13, addressed to "Chief Byrd" and "[a]ny individuals associated in an [i]nvestigator[y] capacity" on letterhead that read, "Mason County Deputy Sheriffs Guild." CP at 10.

¶5 The letter, which did not expressly represent that it was a public records request, stated:

---

[6] This form is available online at http://www.co.mason.wa.us/forms/commissioners/public_records_request.pdf.

I will be representing Martin Borcherding as his guild representative regarding any internal affairs investigation or line investigation. From this point forward if contact is needed with Martin for investigative purposes either formal or non-formal arrangements will need to be made through me.

At the time any active investigation begins either official or unofficial the guild will assume that an internal affairs investigation has begun. Also we are aware that there may be a related criminal investigation with Martin being a victim. We will assume at this time that there is an arterial [sic] motive to use any findings or evidence in this investigation in any current active internal affairs/line investigation or any additional personnel investigations which may occur as [a] result of any findings. The guild will assume at this time that any investigation regarding Martin, being administrative or criminal in nature, is with the intention to be used ultimately in a personnel matter.

Upon receipt of this memo understand that the guild is requesting and has the right to be privileged to any work product, or investigative findings regarding any investigation involving Martin. This includes any notes, interoffice memo's [sic] or emails that may be related.

Also I am requesting that I be afforded the opportunity to sit in as an observer during any witness interviews which are conducted as [a] result of any investigation regarding Martin.

Please respond to this memo in writing.

Regards

Rich Germeau

CP at 10. Germeau "personally submitted" a copy of this letter to Chief Deputy Osterhout and "placed a second copy of it on the desk" of Chief Deputy Dean Byrd. CP at 31.

¶6 A few hours later Germeau went to a Sheriff's Office building where he spoke with Undersheriff Jim Barrett, to whom Byrd had earlier given a copy of Germeau's letter. During their conversation, Barrett handed Germeau a copy of the letter and told Germeau that (1) there was no "internal affairs (IA) investigation being conducted regard-

ing . . . Borcherding at the time and thus no records to provide to [Germeau]," but (2) he (Germeau) could resubmit the letter "if an IA was ever conducted."[7] CP at 205. According to Germeau, Barrett also said that "the Borcherding case was being identified as a criminal matter" and that Barrett " 'd[id]n't have to give [Germeau] sh[*]t related to a criminal investigation.' " CP at 31.

¶7 When Germeau tried to hand the letter back to Barrett, Barrett refused it and told Germeau to resubmit the letter only after Germeau removed any request for criminal investigation records from the letter. Germeau told Barrett that he (Germeau) "would let the request stand as it was and handed [the letter] back to Barrett," who took it back. CP at 32. Germeau left the Sheriff's Office building.

¶8 Barrett wrote a note and placed it on top of Germeau's letter, which read:

> 08/13/09 Meet [sic] with Germeau in Det. Sgts office. Det Gardner present. Told NO IA/LR. Due to injuries and new info MB [Martin Borcherding] is victim of assault and we are treating it that way. Initial memos from responding officers did not not[e] these injuries/victim. Offered Germeau to take this back—he refused.

CP at 206. The Sheriff's Office never provided Germeau with a written acknowledgement of his letter, as the letter requested.

¶9 Although Germeau had previously used Mason County's public records request form for PRA requests, he did not use the form for his August 13 correspondence because, according to him, (1) he was requesting public records from his employer, the Sheriff's Office, so he believed that he "did not need to get the rest of the County involved by using a County-wide record request form"; and (2) he "was not

---

[7] Detective Jack Gardner, the "Sheriff's Office primary internal affairs investigator," was also present during this conversation; according to Gardner, there was no "up coming [sic] or current administrative investigation" of Borcherding as of August 13, 2009. CP at 212.

aware that the Sheriff's Office had its own public records request form and did not know the procedure for filing a public records request with the Sheriff's Office." CP at 31. Nevertheless, nowhere in his August 13 letter did Germeau mention that it was a request for public records under the PRA. *See* CP at 10.

¶10 Thus, it did not appear to Barrett that Germeau's August 13 letter was a PRA request that required the Sheriff's Office to comply with PRA disclosure requirements and timelines. Instead, Barrett believed that Germeau had written the letter in his capacity as guild representative and that the letter's purpose was "to assist [the Guild] in [its] role of representing [Borcherding]"; thus, in Barrett's view, there was no need for clarification. CP at 214. According to Germeau, the Guild had never requested documents from the Sheriff's Office in the past, either "formally or informally." CP at 30.

## C. Borcherding's December 10 Public Records Request to Sheriff

¶11 On December 10, 2009, Borcherding filled out, signed, and submitted to the Sheriff's Office 14 separate official Mason County Public Records Request Forms seeking: (1) e-mails and memoranda that "pertain to case #09-12002 and 09-12004 and/or [his] related internal/ personnel issues with same," CP at 255; and (2) "any and all documents and or electronic/digital records pertaining to the internal investigation that was suspended on or about 8/12/09."[8] CP at 256. The Sheriff's Office provided records in response to Borcherding's requests.

---

[8] The requests apparently were for documents related to the August 9, 2009 incidents, but the record does not confirm that.

### D. Six Disclosed Documents

¶12 Germeau came into possession of six documents,[9] but he did not believe that Mason County and the Sheriff's Office had provided these documents under the PRA. The first document was a Sheriff's Office memorandum from Deputy La France to Sergeant Drogmund dated August 9, describing La France's response to and a detailed account of the reported bar fight and the domestic disturbance on August 9 involving Borcherding. The second document was a Sheriff's Office memorandum from Deputy Ellis to Sergeant Drogmund dated August 9, describing Ellis's response to the domestic disturbance call with La France. The third document was a Sheriff's Office memorandum from Sergeant Drogmund to Chief Deputy Osterhout dated August 9, recounting some details from Deputies La France and Ellis's memoranda, together with Drogmund's description of the domestic disturbance response.

¶13 The fourth document was a Sheriff's Office memorandum from Undersheriff Barrett to Chief Deputy Osterhout dated August 12, the subject line of which read, "Investigative FIR[10]/Case Report." CP at 84. The memorandum stated:

> After review of your memorandum regarding the incident involving Sergeant Borcherding on August 9th, 2009 you are directed to take the following action. Sergeant Drogmund will complete an FIR based on the initial information at time of incident/s. Refer that casefile to Detective Sergeant Dracobly for follow up.

CP at 84.

---

[9] The record does not reveal exactly when, how, or from whom Germeau received these documents. The record does show, however, that after Germeau filed his PRA action, Sheriff's Office Chief Civil Deputy Jan Alvord, the employee responsible for handling the Sheriff's Office's public records requests, gave the Mason County Prosecuting Attorney's Office the documents that the Sheriff's Office had previously provided to Borcherding. Alvord believed that the Prosecutor's Office then passed these documents along to Germeau.

[10] The record does not explain this "FIR" acronym.

¶14 The fifth document was an e-mail from Chief Deputy Osterhout to Sergeant Drogmund on August 12, stating:

> Martin Borcherding has suffered a concussion from the incident which occurred early Sunday morning. Apparently he was struck with we believe a rock when he exited Leonard K's. He needed 5 staples to close the wound. We need an FIR completed since we now have a felony assault against a county employee. I realize there is not much information concerning the incident at the bar, but put down what you have and I will forward it to the detectives for follow-up.

CP at 86.

¶15 The sixth document was a memorandum from Undersheriff Barrett to Chief Deputy Osterhout dated February 22, 2010 but created on August 12, 2009 at 7:30 AM. The memorandum described the August 9, 2009 events, and included opinions about Borcherding's possible violations of Sheriff's Office's policies and a recommendation that "Sergeant Borcherding's conduct during this entire incident could be classified as serious misconduct and an Internal Investigation should be initiated." CP at 90.

## II. PROCEDURE

¶16 Believing that Mason County and the Sheriff's Office were withholding additional records, Germeau filed a complaint against Mason County and the Sheriff's Office (collectively, the County)[11] under the PRA. He alleged that the County had failed to respond to his "public records request" in a timely manner, had not provided him "with any withholding indices describing the basis for withholding records or portions of records," and, therefore, had "violated the Public Records Act." CP at 7-8. Germeau asked

---

[11] According to Germeau, although he named the County's Civil Service Commission as a defendant in his original complaint, he removed it from his August 2, 2010 amended complaint.

the superior court (1) to order the County "to properly respond to [Germeau's] August 13, 2009 public records request and promptly provide all non-exempt public records"; (2) to impose monetary penalties on the County for each day that it failed to comply with that order; and (3) to award him attorney fees and costs. CP at 8.

## A. County's Answer

¶17 The County answered that it had received Germeau's August 13, 2009 letter. But it denied that Germeau's letter was a PRA request, asserted that "[t]he content of the [letter] speaks for itself," and argued that the letter did not trigger the County's production obligations under the PRA. CP at 144. The County also asserted an affirmative defense that Germeau "[wa]s not the real party in interest and lack[ed] standing to pursue the [PRA] claims asserted in the complaint." CP at 147.

¶18 The County admitted having provided Germeau with the same six records it had provided in response to Brocherding's December 10, 2009 explicit PRA request. But the County averred that it had given those six records to Germeau, not in response to his August 13 letter (because "[t]he documents referred to in Deputy Germeau's [letter] did not exist at the time of [his letter]"), but rather because in that letter Germeau had notified the County that he was the Guild representative for Borcherding in connection with the investigation, about which Germeau asked to be kept informed. CP at 145.

## B. Summary Judgment

¶19 On August 12, 2010, Germeau moved for summary judgment, arguing that (1) his August 13 letter was "a valid request for records pursuant to the PRA because he requested identifiable public records and gave fair notice to the agency both through his written request and through his interaction with Undersheriff Barrett," and (2) the

County had violated the PRA by failing to respond to his (Germeau's) letter in a timely manner. CP at 19.

¶20 The County opposed Germeau's summary judgment motion, contending that (1) Germeau's August 13 letter was not a public records request under the PRA because it did not give " 'fair notice' . . . that [Germeau] was requesting records *under the public records act*"; and (2) even if the letter had been a public records request, the County did not violate the PRA because the records that Germeau requested did not exist for the County to produce at the time he presented the letter. CP at 99.

¶21 The County also filed its own summary judgment motion, echoing these same arguments; in addition to maintaining that Germeau's August 13 letter was not a PRA request, the County asserted that Germeau "[wa]s not the real party in interest and lack[ed] standing" because the Guild, not Germeau, had requested the information from the County. CP at 151. In response, Germeau argued that he had standing to bring his PRA action under the "zone of interest" doctrine because his interest in obtaining records about Borcherding fell within the "zone of interests" that the PRA protected and because Borcherding suffered an injury-in-fact. CP at 228.

¶22 On September 10, the superior court (1) granted the County's motion for summary judgment, (2) denied Germeau's motion for summary judgment, and (3) dismissed Germeau's PRA action. The superior court explained:

> I'm going to grant the [County's] summary judgment [motion] on both standing, saying [Germeau] doesn't have standing because he wasn't making [the request] in his personal capacity, but I'll say as a footnote that I think that's a weak reed for me to rely on because if you liberally construe the act . . . he could have standing based on the zone of interest argument. . . . [B]ut *I'm going to rule [Germeau] doesn't have standing so that if this goes up, that will be addressed by the Court of Appeals.*

What I think this case turns on is the *Wood*[12] case and the *Bonamy*[13] case. *This is not a clear request for a public record*, particularly in light of the fact that *it's a guild asking for ongoing information, things that don't even exist yet*, for protection of one of its own members. So I'm going to grant summary judgment to Mason County.

Verbatim Report of Proceedings (VRP) at 17-18 (emphasis added). Germeau asked the superior court to clarify whether it was "reaching a question of whether there was a [PRA] violation." VRP at 18. The superior court responded, "I'm not finding a violation because I'm granting Mason County's request, so no violation, no attorney fees, penalties." VRP at 18.

¶23 Germeau appeals.

## ANALYSIS

### I. SUMMARY JUDGMENT

¶24 Germeau argues that the superior court erred in granting summary judgment to the County.[14] We disagree.

### A. Standard of Review

¶25 We review summary judgment orders de novo, "stand[ing] in the same position as the trial court." *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 713-14, 248 P.3d 150 (2011); *see also Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). "Summary judgment is proper if pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the nonmoving party, show

---

[12] *Wood v. Lowe*, 102 Wn. App. 872, 10 P.3d 494 (2000).

[13] *Bonamy v. City of Seattle*, 92 Wn. App. 403, 960 P.2d 447 (1998), *review denied*, 137 Wn.2d 1012 (1999).

[14] Germeau also asks us to decide whether the County violated the PRA. We decline this invitation as premature: The superior court did not decide whether the County failed to comply with the PRA, and it made no findings of fact on that issue for us to review.

there is no genuine issue of material fact and demonstrate that the party making the motion is entitled to judgment as a matter of law." *Bratton v. Welp*, 145 Wn.2d 572, 576, 39 P.3d 959 (2002).

¶26 We also review de novo challenges to agency actions under the PRA. RCW 42.56.330(3); *Greenhalgh*, 160 Wn. App. at 713-14. Where the record consists only of affidavits, memoranda of law, and other documentary evidence, we stand in the same position as the superior court, and the superior court's factual findings on disputed issues do not bind us. *DeLong v. Parmelee*, 157 Wn. App. 119, 143, 236 P.3d 936 (2010).[15]

¶27 "The PRA must be 'liberally construed and its exemptions narrowly construed' to ensure that the public's interest is protected." *City of Federal Way v. Koenig*, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009) (quoting RCW 42.56.030). "In construing the PRA, we look at the act in its entirety in order to enforce the law's overall purpose." *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009).

## B. Standing

¶28 Germeau first argues that the superior court erred by ruling that he lacked standing to bring a PRA action against the County because "he wasn't making [the request] in his personal capacity." VRP at 17. The County counters that the trial court did not err because the Guild, not Germeau himself, requested the records and therefore the Guild should have brought the PRA action. We agree with Germeau that he had standing.

¶29 "The PRA is a 'strongly worded mandate for broad disclosure of public records.'" *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011)

---

[15] *Remanded on other grounds by DeLong v. Parmelee*, 171 Wn.2d 1004, 248 P.3d 1042 (2011).

(internal quotation marks omitted) (quoting *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007)). "The purpose of the PRA is to 'ensure the sovereignty of the people and the accountability of the governmental agencies that serve them' by providing full access to information concerning the conduct of government." *Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 118, 231 P.3d 219 (2010) (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997)). Under the PRA, all state and local agencies must disclose any public record upon request unless the record falls under a statutory exemption. RCW 42.56.520, .550(1); *Wood*, 102 Wn. App. at 876. An agency must respond within five business days of receiving a public records request. RCW 42.56.520. If the agency fails to do so, then

> [u]pon the motion of *any person* having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records.

RCW 42.56.550(1) (emphasis added).

¶30 In *Kleven v. City of Des Moines*, 111 Wn. App. 284, 289-93, 44 P.3d 887, *recons. denied*, 2002 Wash. App. LEXIS 1411 (2002), Division One of our court addressed the meaning of "any person" under this provision of the PRA and held that an attorney's client had standing to bring a PRA action against an agency, even though the attorney had made the original PRA requests. As the court explained, "The doctrine of standing requires that a claimant must have a *personal stake in the outcome of a case* in order to bring suit." *Kleven*, 111 Wn. App. at 290 (emphasis added) (citing *Gustafson v. Gustafson*, 47 Wn. App. 272, 276, 734 P.2d 949 (1987), *review denied*, 109 Wn.2d 1024 (1988)). Division One reasoned that, because the client's attorney requested the records "on behalf of" his client, the client

had "a personal stake in seeking relief under the P[R]A." *Kleven*, 111 Wn. App. at 290-91.

¶31 Similarly here, Germeau clearly had "a personal stake" in his PRA action against the County. *Kleven*, 111 Wn. App. at 290. As the County asserts, most likely the Guild itself, not Germeau personally, would represent Borcherding in any internal disciplinary or adversarial proceeding if one arose. Nonetheless, Germeau was the guild representative and, even in that capacity, he had "a personal stake" in receiving the requested information. *Kleven*, 111 Wn. App. at 290. Holding to the contrary—that Germeau lacked standing—would be a "hypertechnical barrier" that would frustrate the PRA's goal of liberal public records disclosure. *Wood*, 102 Wn. App. at 878. Thus, we hold that Germeau had standing to bring his PRA action against the County.

## C. Failure To Provide Fair Notice of "PRA Request"

¶32 Germeau next argues that the superior court erred in ruling that his August 13 letter did not trigger any County disclosure obligations under the PRA because the letter "[wa]s not a clear request for a public record" and did not provide fair notice that it was an actual PRA request VRP at 18. We disagree.

¶33 "[T]he P[R]A 'only applies when public records have been requested. In other words, public disclosure is not necessary until and unless there has been a specific request for records.' " *Wood*, 102 Wn. App. at 876-77.[16] A " 'specific request for [public] records' " occurs when "the person requesting documents from an agency *state*[s] *the request with sufficient clarity to give the agency fair notice that it had received a request for a public record*." *Wood*, 102 Wn. App. at 877-78 (emphasis added) (quoting *Bonamy*, 92 Wn.

---

[16] Quoting *Bonamy*, 92 Wn. App. at 409; *see also* RCW 42.56.080 ("[A]gencies shall, *upon request for identifiable public records*, make them promptly available." (emphasis added)).

App. at 409). In other words, at a minimum, the PRA "require[s] that requests be recognizable as PRA requests." *Beal v. City of Seattle*, 150 Wn. App. 865, 876, 209 P.3d 872 (2009). The issue here is not whether the County adhered to the PRA's disclosure requirements but, rather, whether Germeau's letter triggered any obligation by the County to comply with the PRA.

¶34 There is no single, comprehensive definition of "fair notice" for PRA purposes. *Wood*, 102 Wn. App. at 878. Cases from our Supreme Court and Divisions One and Three of our court have advanced factors that comprise "fair notice." These factors fall under two broad categories: (1) characteristics of the request itself, and (2) characteristics of the requested records. We examine each category and their accompanying factors in turn.

¶35 Although most of the factors weigh in favor of Germeau, one factor is dispositive in favor of the County: As the superior court found, nothing in Germeau's August 13 letter put the County on notice that he was requesting records under the PRA. On the contrary, Germeau's letter appeared to request documents and ongoing information in connection with the Sheriff's Office's investigation of Borcherding under the Guild's collective-bargaining agreement with the Sheriff's Office, not the PRA. We affirm the superior court's ruling that this factor is fatal to Germeau's argument and his action under the PRA.

## 1. Characteristics of the request

¶36 The first group of "fair notice" factors concerns the characteristics of the request itself: (1) the request's language, *see Wood*, 102 Wn. App. at 879; (2) its format, *see Hangartner v. City of Seattle*, 151 Wn.2d 439, 447-48, 90 P.3d 26 (2004); and (3) the recipient of the request. *See Parmelee v. Clarke*, 148 Wn. App. 748, 754-56, 201 P.3d 1022 (2008), *review denied*, 166 Wn.2d 1017 (2009). Two of these factors (the letter's format and its recipient) do not defeat

Germeau's argument.[17] The remaining factor, however, does; and it is determinative. The language of Germeau's letter did not provide fair notice that it was a PRA request.

¶37 Although "fair notice" does not require the requester to cite the PRA in his request, the request must state with sufficient clarity that it is a request for a public record and "give the agency fair notice that it ha[s] received" a PRA request. *Wood*, 102 Wn. App. at 878. In this, Germeau's letter failed. In the first sentence of the letter, Germeau identified himself as Borcherding's "guild representative regarding any internal affairs investigation or line investigation." CP at 10. In the next sentence, Germeau wrote, "From this point forward if contact is needed with [Borcherding] for *investigative purposes* either formal or non-formal arrangements will need to be made through me." CP at 10 (emphasis added). These opening lines of Germeau's letter evince only that he was establishing himself as the point-of-contact for any Mason County Sheriff's Office probe into Borcherding's conduct.

¶38 Germeau did not mention any type of documents or requests until the third paragraph of the letter, in which he wrote, "[T]he guild is requesting and has the right to be

---

[17] We note, and the County does not dispute, that Germeau's letter format, instead of using the County's or Sheriff's Office's PRA forms, was not instrumental in failing to provide fair notice to the County. On the contrary, we note, but do not hold determinative, that (1) Germeau's previous PRA requests to the County had used the County's PRA forms and had expressly stated that they were PRA requests; and (2) this time he did not use the County form or follow the Sheriff's Office's "Public Records Procedures" policy, which states: "Requests for public records . . . should include the following information: . . . (C) A *clear indication* that the document is a 'Public Records Request.'" CP at 187 (emphasis added). As our Supreme Court has made clear, "[T]here is no official format for a valid P[R]A request." *Hangartner*, 151 Wn.2d at 447; *see also Beal*, 150 Wn. App. at 874, 876.

Nor, in our view, does Germeau's submission of his letter to Chief Deputy Byrd instead of to the Sheriff's Office public disclosure coordinator, Jan Alvord, render his claim fatal. Division One's decision in *Parmelee* does not change our conclusion here, despite Division One's rejecting Parmelee's argument that the PRA allowed him to submit a valid PRA request to any agency office he chose. *Parmelee*, 148 Wn. App. at 754. Division One did not articulate an exhaustive list of Department of Corrections employees to whom Parmelee could submit his public records request; instead, the court simply eliminated two particular employees from the list of acceptable PRA request recipients. *See Parmelee*, 148 Wn. App. at 754-55.

privileged to any work product, or investigative findings regarding any investigation involving [Borcherding]. This includes any notes, interoffice memo's [sic] or emails that may be related." CP at 10. Again, however, the focus was on the Borcherding investigation; there was no mention of a PRA request. On the contrary, this language indicated that the purpose of Germeau's request for notes, e-mails, memos, and findings was to become privy to any investigation into the August 9, 2009 incidents involving Borcherding.

¶39 We hold that the language of Germeau's August 13 letter did not provide "fair notice" to the County that it was a PRA request. *Wood*, 102 Wn. App. at 878. Despite this lack of notice in the language of his letter, Germeau might have been able to argue that his letter provided "a clear indication" that it was a PRA request had he submitted his letter on a Sheriff's Office's public records form; but he did not do that either. CP at 187.

## 2. Characteristics of requested records

¶40 The second group of "fair notice" factors concerns the characteristics of the requested records themselves: (1) whether the request was for specific records, as opposed to information *about* or *contained in* the records, *Beal*, 150 Wn. App. at 876; (2) whether the requested records were actual public records, RCW 42.56.010(2);[18] and (3) whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority. *Wood*, 102 Wn. App. at 880-81. Although the first two factors support Germeau's argument, the third factor supports the County's argument. This third factor is determinative because it was reasonable for the County to have believed that Germeau was requesting the documents under the collective-bargaining agreement

---

[18] RCW 42.56.010(2) defines "public record" as "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics."

between the Guild and the Sheriff's Office, independent of and unrelated to the PRA.[19]

¶41 Again, Germeau's letter stated: "[T]he guild is requesting and has the right to be privileged to any work product, or investigative findings regarding any investigation involving [Borcherding]. This includes any notes, interoffice memo's [sic] or emails that may be related." CP at 10. Most important, the letter's language strongly suggested that the collective-bargaining agreement entitled Germeau (in his capacity as guild representative) to the requested records or, at the very least, that Germeau was making the request in such a capacity, not as a PRA request. CP at 10 ("I will be representing . . . Borcherding as his guild representative regarding any internal affairs investigation . . . . Upon receipt of this memo understand that the guild is requesting and has the right to be privileged to any work product, or investigative findings regarding any investigation involving [Borcherding].") As the County correctly notes,

> The Guild ha[d] a right [under RCW 41.56.030(4)'s definition of "collective bargaining"] to receive information from the Sheriff's Office to enable it to represent its members in internal affairs investigations. It was therefore reasonable for the officials who received the memo to view it in that context, not as a public records request.

Br. of Resp't at 25-26. We agree with the County that, "as in *Wood*, there [was] an independent statutory basis for the request"; here, that independent statutory basis was RCW 41.56.030(4). Br. of Resp't at 24.

¶42 In *Wood*, an independent, non-PRA authority, namely RCW 49.12.250(1), required an agency to make a personnel file available " 'within a reasonable period of time' after the [entitled] employee requests the file." *Wood*, 102 Wn. App.

---

[19] Because we hold this third factor dispositive, we do not address the County's argument that Germeau's letter requested particular documents about an internal affairs investigation that did not exist at the time of his request.

at 880 (quoting RCW 49.12.250(1)). Because of this statutory requirement and because the employee's letter did not specifically mention the PRA, Division Three concluded, "Given the ambiguous nature of [the employee's] letter, [the agency] would not have been in error in thinking [the employee] had made a request under [RCW] 49.12[.250(1)]," and not under the PRA. *Wood*, 102 Wn. App. at 881.

¶43 Just as *Wood* involved a non-PRA statutory basis for a document request,[20] here the County argues that the collective bargaining statute, RCW 41.56.030(4), was an independent statutory basis that entitled Germeau to request information in his capacity as Guild representative:

> "Collective bargaining" means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or to be required to make a concession unless otherwise provided in this chapter.

RCW 41.56.030(4). Germeau responds, "This statute says nothing about obtaining records." Reply Br. of Appellant at 13. We disagree.

¶44 Under RCW 41.56.030(4), "[C]ollective bargaining includes the duty to *provide relevant information* the other party needs to carry out its collective bargaining responsibilities." *City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 383, 831 P.2d 738 (1992) (emphasis

---

[20] The *Wood* analysis focused on whether the agency reasonably believed that the employee made the request under a non-PRA based authority, not on whether the non-PRA based authority *actually* entitled the employee to the requested documents. *See Wood*, 102 Wn. App. at 881 ("Given the ambiguous nature of Ms. Wood's letter, Mr. Lowe would not have been in error in *thinking* she had made a request under [RCW] 49.12[.250(1)]." (emphasis added)).

added). *Local 1604* strongly suggests that "the duty to provide relevant information" is statutory, and therefore implied in any collective-bargaining agreement. *See Local 1604*, 119 Wn.2d at 383. Here, the Guild has a collective-bargaining agreement with the County;[21] thus, RCW 41.56-.030(4) entitled Germeau, in his guild representative capacity, to the requested documents. Under *Wood*, given the "ambiguous nature" of Germeau's letter and its request for information about Borcherding's investigation to which Germeau was entitled under the collective-bargaining agreement, it was reasonable for the County to have believed that Germeau's letter requested documents under the collective-bargaining agreement rather than under the PRA.

¶45 For the foregoing reasons, we hold that Germeau's October 13 letter did not provide fair notice to the County that he was making a PRA request and, therefore, the letter did not trigger the PRA or obligate the County to comply with PRA disclosure requirements.

II. ATTORNEY FEES

A. Germeau

¶46 Germeau asks for attorney fees and costs on appeal under RCW 42.56.550(4), which provides, "Any person who prevails against an agency in any action [under the PRA] shall be awarded all costs, including reasonable attorney fees." RCW 42.56.550(4) requires an award of attorney fees when a person "prevails" under the PRA as follows:

Any *person who prevails against an agency* in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within

---

[21] Collective Bargaining Agreement By and Between Mason County and Mason County Sheriff's Office Employees Guild (Sept. 16, 2010-Dec. 31, 2012), *available at* http://www.co.mason.wa.us/human_resources/bargain_agreements/deputy_sheriffs.PDF.

a reasonable amount of time shall be awarded all costs, *including reasonable attorney fees*, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

(Emphasis added.)

¶47 But as our Supreme Court recently held, a person prevails against an agency only when that agency wrongly withheld documents. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 726, 261 P.3d 119 (2011). Applying *Neighborhood Alliance*'s definition, we hold that Germeau did not "prevail" because Mason County did not wrongfully withhold records: Because Germeau's letter did not give fair notice that it was a PRA request, Mason County was not obligated to comply with the PRA and, therefore, it did not violate the PRA. Germeau did not prevail before the superior court, and he does not prevail on appeal; accordingly, we deny his request for attorney fees under the PRA.

## B. The County

¶48 The County also requests attorney fees and costs, arguing that Germeau's appeal is frivolous. "[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980). Holding that Germeau's appeal is not frivolous, we deny the County's request.

¶49 We affirm the superior court's grant of summary judgment to the County and its dismissal of Germeau's PRA action.

VAN DEREN and JOHANSON, JJ., concur.

Review denied at 174 Wn.2d 1010 (2012).