# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ERIC HOOD, | No. 58362-3-II |
| Appellant, | |
| v. | |
| CENTRALIA COLLEGE, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Eric Hood submitted a public records request to Centralia College in September 2019. He later sued the College in October 2020, under the Public Records Act (PRA), ch. 42.56 RCW, alleging the College's response to his request was inadequate.

In the discovery phase of the 2020 litigation, Hood requested additional documents, including board minutes, that both the trial court and appellate court deemed not responsive to his earlier 2019 public records request. Other documents filed in the 2020 litigation, including his complaint and legal briefing before the trial court and on appeal, also made it clear that Hood wanted additional documents. Hood has identified six written statements made in the course of the 2020 litigation that he refers to as his "litigation requests."

The trial court in the 2020 litigation ultimately concluded that the College did not violate the PRA when responding to Hood's 2019 public records request. We affirmed the trial court, and the Washington Supreme Court denied review. This concluded the 2020 litigation.

58362-3-II

Hood then sued the College again in March 2023, arguing that his "litigation requests" made during the course of the 2020 litigation constituted new public records requests that required the College to respond under the PRA. The College filed a motion to dismiss on the grounds of collateral estoppel, res judicata, and the PRA's one-year statute of limitations. The trial court granted the College's motion.

Hood appeals, arguing that the trial court erred by granting the College's motion to dismiss because his 2023 complaint asserted new claims, articulated a new cause of action, and was filed within the PRA's one-year statute of limitations. He also seeks attorney fees and costs on appeal and on remand.

We affirm the trial court and decline to remand. We decline to award Hood attorney fees and costs on appeal.

FACTS

The current appeal arises from some of the same underlying facts as *Hood v. Centralia Coll.*, No. 56213-8-II (Wash. Ct. App. Aug. 2, 2022) (unpublished).[1]

I. 2019 PUBLIC RECORDS REQUEST

In September 2019, Eric Hood emailed Centralia College a public records request for records pertaining to a recent audit. Hood's 2019 request stated, "I learned that your organization was recently audited by the state auditor. May I have all records it got from the auditor and all records of any response to the audit or to the audit report?" *Hood*, No. 56213-8-II, slip op. at 2.

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2056213-8-II%20Unpublished%20Opinion.pdf, *review denied*, 200 Wn.2d 1032, 525 P.3d 151 (2023).

2

A public records officer at the college collected records she deemed responsive to Hood's request. After a few emails to Hood where she communicated about how she was interpreting Hood's request, the public records officer sent a response containing the audit report and an associated letter, the College's response, and emails about the College's response.

## II. 2020 Lawsuit Arising from the 2019 Public Records Request

Unsatisfied with the records he received, Hood filed a complaint against the College in October 2020 (the 2020 lawsuit). He now argues that a discovery request and arguments made in briefing in the course of his 2020 lawsuit constituted new public records requests independent from his 2019 request. Hood specifically identifies six "litigation requests." Br. of Appellant at 3-6.

In his 2020 complaint, Hood alleged that "Hood's records request encompassed records other than the documents it provided him," and the College "with[held] records responsive to Hood's [2019] request." Clerk's Papers (CP) at 182. Hood contends that this language constituted the first of his "litigation requests." Hood did not identify what the missing records were in his 2020 complaint.

During discovery, Hood began to seek documents beyond the scope of his 2019 public records request. Request for production 23 in the first set of Hood's discovery requests sought "all records related to the State Auditor's Office audit of the College . . . that have not been previously produced, whether or not the College considers them responsive to the Plaintiff's Request." CP at 64-65, 303. Hood refers to this request for production as the second "litigation request."

The College objected to request for production 23, stating that it was "overly broad" and "unduly burdensome" and sought information that was "outside the scope of discovery." CP at 65.

Without waiving these objections, the College produced documents responsive to request for production 23 after a discovery conference where the parties clarified the scope of that request.

The College, in its own interrogatory 11, asked Hood to describe what he considered to be encompassed in the phrase 'response to the audit,' in his 2019 public records request for "all records of any response to the audit or to the audit report." *Hood*, No. 56213-8-II, slip op. at 2, 10. Hood's response, which he argues constitutes his third "litigation request," explained that he sought "any 'reply or reaction' to the audit or audit report and he included a link to a resource on the Office of the Washington State Auditor's website. *Id.* at 10. The linked resource provided a general outline of the audit process, including a preaudit phase, an information-gathering phase, audit findings, and communication of recommendation. Hood alleged that "[s]ome or all of the actions described by the [State Auditor's Office] involve records in the possession of the College that are responsive to Plaintiff's Request which it nonetheless withheld." *Id.* at 11.

The College produced its final response to Hood's discovery requests on June 9, 2021. The College produced 1,737 pages of records that were not part of the College's response to Hood's 2019 public records request.

In his June 2021 brief on the merits, Hood pointed to the additional records produced in discovery as proof that the College's response to the 2019 public records request was inadequate. Hood also argued that the College's responses to his discovery requests were inadequate—notably its failure to search its board files: "The College's *post*-lawsuit search, *not* in response to Hood's records request but only in response to his discovery, was also inadequate. . . . The College's failure to search its Board files is unreasonable . . . . Its failure to produce [the board's] minutes shows an inadequate search . . . . The Minutes were not produced to Hood by the College, thus it withholds

4

them." CP at 98-99. Hood asserts this argument in his brief to the trial court was his fourth "litigation request."

The College responded that Hood's 2019 public records request was ambiguous. The trial court agreed and ruled that the College did not violate the PRA, finding that Hood's 2019 request was "open to subjective interpretation," the College's interpretation was reasonable, and its search was "reasonably calculated to identify all responsive records." *Hood*, No. 56213-8-II, slip op. at 13. As a result, the trial court dismissed Hood's 2020 lawsuit.

### III. APPEAL OF THE DISMISSAL OF THE 2020 LAWSUIT

In his brief to this court on appeal, Hood continued to argue that the College's response to his 2019 public records request was inadequate. Hood stated that his October 2020 complaint "notified the College that Hood considered the College's response to have been overly narrow." CP at 115. He asserted that "[t]he College nonetheless required Hood to engage in a prolonged discovery dispute, and only then reluctantly produced records that it continue[d] to consider non-responsive to his PRA request." *Id*. Hood argued that "the College should have immediately disclosed all the records that it instead produced to Hood only after a discovery dispute, along with its Board's minutes." CP at 116. Hood asserts that this was his fifth "litigation request."

We affirmed, holding that the College's search was "reasonably calculated to find responsive records." *Hood*, No. 56213-8-II, slip op. at 22. We further held that the College's failure to search Board records for minutes responding to the audit was reasonable.

Hood then filed a petition for review with the Washington Supreme Court in November 2022. In the petition, Hood argued that "[e]ven if any part of Hood's request was ambiguous, [the] College had an obligation to modify its response as new information became available." CP at

58362-3-II

147-48. According to Hood, because the College learned Hood wanted certain records, it had a duty to produce them. Hood identifies these arguments in his petition as his sixth "litigation request." The Supreme Court denied the petition for review on March 8, 2023. *See* Ruling Den. Rev., *Hood v. Centralia Coll.*, No. 101464-3 (Wash. Mar. 8, 2023).

IV. CURRENT LAWSUIT

Shortly after the Washington Supreme Court denied his petition for review in March 2023, Hood served the College with a new summons and complaint. Hood's 2023 complaint claimed that over the course of his 2020 lawsuit, the College learned that Hood wanted records independent of his 2019 public records request:

> 3.14 While litigating [Hood's 2020 lawsuit, the] College disclosed some records to Hood that it considered non-responsive to his September 23, 2019 PRA request.
> 3.15 While litigating [Hood's 2020 lawsuit], Hood indicated to the College that he wanted other audit-related records he had identified during the course of litigation, including Board minutes that discuss the audit of the College.
> 3.16 Whether [the] College considered Hood's identification of other audit-related records, including Board records discussing the audit, to be a clarification of his September 23, 2019 PRA request or a new records request or something else, [the] College knew Hood wanted them.
> 3.17 [The] College failed to disclose records, including Board minutes discussing the audit that Hood certainly identified during litigation of [Hood's 2020 lawsuit].
> 3.18 The denial of Hood's Petition for Review regarding [Hood's 2020 lawsuit] indicated that the College was not obligated to disclose, *in response to Hood's September 23, 2019 PRA request*, its Board's minutes and other records identified during litigation of that case.
> 3.19 [The College] intentionally withholds records that Hood both identified and indicated that he wanted while litigating [Hood's 2020 lawsuit], including Board minutes discussing the audit.
> . . . .
> 4.3 Hood's litigation of [Hood's 2020 lawsuit] identified records that he wanted the College to produce to Hood, regardless of whether the College or courts considered them responsive to his September 23, 2019 PRA request.

6

CP at 6-7. Hood sought an order requiring the College to respond and disclose the newly requested records. He also sought penalties and attorney fees under the relevant PRA provisions.

The College moved to dismiss Hood's 2023 lawsuit under CR 12(b)(6) on the grounds that Hood's complaint was barred by the doctrines of res judicata and collateral estoppel, as well as the PRA's one-year statute of limitations. The College's res judicata and collateral estoppel arguments were based on its assertions that "Mr. Hood is still arguing that the records he sought in both the prior and present case are responsive to his September 23, 2019, request for records," and that the issue in this 2023 lawsuit is still "the reasonableness of the College's interpretation of [Hood's 2019 public records request]." CP at 17, 19.

In response to the College's motion to dismiss, Hood moved to amend his complaint to clarify that the 2023 complaint was "*not* based on his September 23, 2019[,] request, but rather on his subsequent November 16, 2020[,]request for public records," referring to request for production 23 from the 2020 litigation. CP at 242. The trial court denied Hood's motion to amend based on the PRA's one-year statute of limitations, as the College's last production of records, even including records produced during discovery in the 2020 litigation, was in June 2021. Hood's current lawsuit was filed in March 2023, more than one year later.

At a hearing on the College's motion to dismiss, the trial court explained that it planned to base its decision on res judicata, collateral estoppel, and the PRA's statute of limitations. The trial court granted the motion to dismiss after reviewing "Defendant's Motion to Dismiss and all records and pleadings." CP at 222. Hood appeals the dismissal of his 2023 lawsuit.

## ANALYSIS

### I. SCOPE OF APPEAL

The College argues as a threshold matter that the claims and arguments made in Hood's briefing to this court are not properly before us on appeal. Specifically, the College argues that the "relief Hood sought in his 2023 complaint is an order for the College to 'promptly and properly respond to Mr. Hood's public records request . . . .'" Resp't's Opening Br. at 14. Because the only explicit mention of a public records request in Hood's complaint was his September 2019 request, the College asserts that Hood merely seeks to re-litigate that 2019 public records request. The College further argues that Hood's motion to amend his complaint sought to add the new claim that Hood's discovery requests and legal briefing in the 2020 litigation were new public records requests. But the trial court did not allow Hood to amend his complaint. Thus, the College argues, because Hood does not contest the trial court's denial of his motion to amend, those new claims are not before this court.

Hood responds that his 2023 complaint sufficiently raised the argument that his "litigation requests" are new public records requests, distinct from his 2019 public records request. Thus, Hood asserts that his claims and argument made on appeal are squarely within the claims and argument made below. We agree with Hood.

We "may refuse to review any claim of error [that] was not raised in the trial court." RAP 2.5(a). However, to raise a claim, a pleading need only contain "(1) a short and plain statement of the claim . . . and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." CR 8(a). Further, CR 8(f) demands that "[a]ll pleadings shall be so construed as to do substantial justice." This rule requires that "[c]ourts must liberally construe complaints." *Kitsap*

*County v. Kitsap County Corr. Officers' Guild, Inc.*, 179 Wn. App. 987, 994, 320 P.3d 70 (2014). Thus, for a plaintiff's complaint to be sufficient, it need not be "a vision of precise pleading" so long as it "seems sufficient to put defendants on notice [of the plaintiff's legal theory]." *Schoening v. Grays Harbor Cmty. Hosp.*, 40 Wn. App. 331, 336-37, 698 P.2d 593 (1985).

Here, Hood's 2023 complaint, read in context, sufficiently raises the issue argued in his opening brief—that his "litigation requests" made in the course of the 2020 litigation were also public records requests separate from the 2019 public records request. In his 2023 complaint, Hood asserted that he identified and requested documents during the course of the 2020 litigation that were independent of his 2019 request. Specifically, Hood asserted that "[the] College failed to disclose records, including Board minutes discussing the audit that Hood certainly identified during litigation of [Hood's 2020 lawsuit]." CP at 6. Further, he claimed that "Hood's litigation of [Hood's 2020 lawsuit] identified records that he wanted the College to produce to Hood, regardless of whether the College or courts considered them responsive to his September 23, 2019 PRA request." CP at 7. Finally, Hood's request for relief was for an order to disclose records, Hood had requested but not yet received, penalties, and attorney fees. This language was clear enough to put the College on notice that Hood was, at least in part, claiming PRA penalties and attorney fees for the failure to adequately respond to his "litigation requests" made in the course of his 2020 litigation.

## II. STANDARD OF REVIEW

In an appeal from a trial court's dismissal of a complaint under CR 12(b)(6), our review is de novo. *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). "Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove 'any set of facts [that]

would justify recovery.'" *Id*. (quoting *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)) "The court presumes all facts alleged in the plaintiff's complaint are true and may consider hypothetical facts supporting the plaintiff's claims." *Id*. Here, the facts before the trial court were undisputed, and the parties' arguments were about the legal effect of Hood's requests.

In granting the College's motion to dismiss, the trial court considered "all records and pleadings on file." CP at 222. This included our unpublished decision from Hood's 2020 lawsuit, as well as declarations from both parties that attached pleadings and discovery from the 2020 litigation. Neither party objected to the trial court's consideration of these materials.

Generally, where "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." CR 12(b)(7). However, "'[d]ocuments whose contents are alleged in a complaint but which are not physically attached to the pleading may . . . be considered in ruling on a CR 12(b)(6) motion to dismiss.'" *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (alteration in original) (quoting *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726, 189 P.3d 168 (2008)). "Further, where the 'basic operative facts are undisputed and the core issue is one of law,' the motion to dismiss need not be treated as a motion for summary judgment." *Id*. (quoting *Ortbald v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)). Additionally, a court "'may take judicial notice of public documents if their authenticity cannot be reasonably disputed' without converting the motion to a motion for summary judgment." *Wash. State Hum. Rts. Comm'n v. Hous. Auth.*, 21 Wn. App. 2d 978, 983, 509 P.3d 319 (2022) (quoting *Rodriguez*, 144 Wn. App. at 725-26).

The parties do not disagree on the underlying facts of this case, which were established in our prior unpublished opinion, nor do they dispute the contents of the litigation documents from Hood's 2020 lawsuit. The core issues here are legal. Thus, we may review the record before us without treating the College's 12(b)(6) motion to dismiss as a motion for summary judgment.

### III. "LITIGATION REQUESTS"

Hood argues that his "litigation requests" made during the 2020 litigation gave fair notice to the College that they were actually public records requests. The College responds that Hood's discovery requests in the 2020 litigation explicitly invoked the authority of the civil rules of discovery, not the PRA. The College further points out that Hood's non-discovery "litigation requests," specifically the arguments Hood made in his briefing to the trial court, this court, and the petition for review to the Washington Supreme Court, do not even "remotely resemble . . . PRA request[s]." Resp't's Opening Br. at 23. We agree that Hood's litigation requests were not public records requests.

### A.      Fair Notice Test

The PRA states, "Agencies shall honor requests received . . . for identifiable public records unless exempted by provisions of this chapter. No official format is required for making a records request." RCW 42.56.080(2). However, for the PRA to apply, requests must be recognizable as public records requests. *Germeau v. Mason County*, 166 Wn. App. 789, 805, 271 P.3d 932 (2012). For a request to be recognizable as a public records request, the requester must give the agency "fair notice" that they are requesting records under the PRA. *Id*. at 804-05.

We apply the "fair notice" test to "distinguish PRA requests from those arising from some other legal authority." *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 80, 493 P.3d 1245 (2021).

11

Courts use a multifactor test to determine whether a request has established fair notice. *Germeau,* 166 Wn. App. at 805. "These factors fall under two broad categories: (1) the characteristics of the request itself, and (2) the characteristics of the requested records." *Id*.

The factors relating to the characteristics of the request are its language, its format, and the recipient of the request. *O'Dea,* 19 Wn. App. 2d at 81. The factors relating to the characteristics of the records are whether the request was for *specific* records, as opposed to information about or contained in the records; whether the requested records were *actual* public records; and whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority. *Id*.

While courts weigh all of the above factors, if a request for records reasonably appears to be made under an authority other than the PRA, this factor is usually dispositive. *See Germeau*, 166 Wn. App. at 805 (finding it dispositive, despite most factors favoring fair notice, that plaintiff's letter appeared to request documents under a collective bargaining agreement, not under the PRA); *Wood v. Lowe*, 102 Wn. App. 872, 880-81, 10 P.3d 494 (2000) (finding no fair notice where plaintiff's public records request was ambiguous and could have been construed as a personnel action under RCW 49.12.250(1)).

It remains possible to provide fair notice where a request is submitted in the shadow of non-PRA legal authority. However, to do so, the request must clearly distinguish itself as a public records request. *O'Dea*, 19 Wn. App. 2d at 72-73 (finding fair notice despite plaintiff's letters requesting documents being attached as an exhibit to a complaint, where the letters explicitly requested documents under the PRA, and their subject lines read "'PUBLIC RECORDS REQUEST'").

B.      Our Prior Application of the Fair Notice Test

In *Germeau*, the plaintiff was a representative for the Mason County Sheriff's Office Employees Guild, which had a collective bargaining agreement with Mason County. 166 Wn. App. at 792. Germeau represented a detective who was under investigation by the county's sheriff's office. *Id*. at 793. In his capacity as the detective's guild representative, Germeau wrote a letter to the chief of the sheriff's office requesting information about the investigation. *Id*. at 793-94. The letter introduced Germeau as the detective's "guild representative regarding any internal affairs investigation or line investigation." *Id*. at 794. The third paragraph of the letter stated that "the guild is requesting and has the right to be privileged to any work product, or investigative findings regarding any investigation involving [the detective]. This includes any notes, interoffice memo's . . . or emails that may be related." *Id*. Germeau later argued that the letter was a public records request. *Id*. at 799.

This court held that Germeau's letter did not provide fair notice. *Germeau*, 166 Wn. App. at 804-10. Of the three characteristics of the request, which are its language, format, and recipient, we found the language of the letter to be determinative. *Id*. at 805-06. In the letter, Germeau identified himself as a guild representative and as the detective's point of contact for any investigation-related communications. *Id*. at 806. Where the letter requested documents, its focus was on "investigative findings." *Id*. at 807. This language showed the purpose of the letter was for Germeau to "become privy to any investigation" of the detective; the letter did not appear to be a public records request. *Id*.

We further found that neither the format nor the recipient of Germeau's letter was dispositive. *Id*. at 806 n.17. Regarding format, we noted that although Germeau did not use the

County's PRA form as he had in the past, there is no official format for a valid PRA request. *Id.* As for the recipient of the request, Germeau's choice of the chief deputy, as opposed to the Mason County Sheriff's Office public disclosure coordinator, did not "render his claim fatal." *Id.*

We also found that the characteristics of the requested records failed to provide fair notice. *Id.* at 807-08. The letter identified specific documents, namely the Sheriff's Office's investigative findings, related interoffice memos, and related emails, and those documents were actually public records. *Id.* But because the Guild had a right under its collective bargaining agreement to receive information from the sheriff's office, the third factor—whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority—was determinative. *Id.* It was reasonable for the County to have believed the letter invoked the authority of the collective bargaining agreement between the Guild and the Sheriff's Office, not the PRA. *Id.* We explained that "the letter's language strongly suggested that the [collective bargaining] agreement entitled Germeau (in his capacity as guild representative) to the requested records or, at the very least, that Germeau was making the request in such a capacity, not as a PRA request." *Id.* at 808.

In contrast, in *O'Dea*, we found the disputed requests were public records requests made under the PRA. O'Dea, a Tacoma police officer, was placed on administrative leave after a shooting incident. 19 Wn. App. 2d at 71. O'Dea's lawyer mailed two public records requests to the City of Tacoma's Public Records Office, but the public records officer never received the letters. *Id.* O'Dea then sued the City under the PRA because the City failed to respond. *Id.* at 74.

O'Dea attached the two public records requests as exhibits to his complaint. *Id.* Both letters explicitly requested documents under the PRA, and their subject lines read, "'PUBLIC RECORDS

REQUEST.'" *Id*. at 72-73. The requested documents included certain claims filed against the Tacoma Police Department, policies for notifying department staff about incidents involving use of force, training directives, and more. *Id*. at 73. The City answered the complaint, but did not disclose the records requested in the attached public records requests until nine months later. *Id*. at 71. O'Dea argued that the City violated the PRA by failing to timely respond to the two letters attached to his complaint. *Id*. at 74.

This court held that O'Dea's public records requests provided fair notice. *Id*. at 81. The characteristics of the request favored O'Dea. *Id*. First, the language explicitly referenced the PRA. We noted each letter was clearly titled "'PUBLIC RECORDS ACT REQUEST.'" *Id.* For the same reason, the letter's format, with a clear reference to the PRA in the title, indicated it was a public records request, even though it did not arrive through the City's online PRA submission form. *Id.* Third, even though the letters were received during litigation, the letters were addressed to the City's public records officer. *Id*.

The characteristics of the records also favored O'Dea. The first two factors, whether the request was for specific and actual public records, were clear: "O'Dea asked for documents relating to Department investigations, deadly force review board incidents, claims for damages, policies and procedures, training directives, personnel rosters, and other internal communications, all public records that the City possessed." *Id*. at 81. The third factor was a "closer question" but also favored O'Dea. *Id*. We found that it was not reasonable for the City to believe O'Dea requested documents under an independent, non-PRA authority. *Id*. "Although the City received the letters as attachments to a complaint, when read in context with the substance of the complaint, it was obvious that the plaintiffs had already attempted to submit these letters as public records requests."

*Id.* Further, O'Dea stated in his complaint that he was awaiting a response to his public records request letters, which both expressly referenced the PRA. *Id.* at 82. Because the complaint and request letters so clearly invoked the PRA, the fact that they were attached as exhibits to a complaint did not prevent a finding of fair notice. *Id.*

C.      Fair Notice Factors Applied to Hood's "Litigation Requests"

When we apply the fair notice factors to Hood's "litigation requests," this case is more like *Germeau* than *O'Dea.*

1.      Characteristics of the request

None of the factors relating to the characteristics of Hood's requests favors a finding that the requests now at issue were public records requests.

a.      Language

First, the language of Hood's "litigation requests" does not support fair notice. Throughout his "litigation requests," Hood merely sought to define the scope of his 2019 public records request or repeatedly demanded records *he* deemed responsive to his 2019 public records request.

In each of his six "litigation requests," Hood did not use language suggesting he was making a new public records request. Hood's 2020 complaint sought "records responsive to Hood's [2019] request." CP at 182. Request for production 23 mimicked his 2019 public records request and again sought records "related to the . . . audit." CP at 64,303. Hood's response to the College's interrogatories merely answered the College's efforts to clarify his 2019 request. *Hood*, No. 56213-8-II, slip op. at 10. Hood's legal briefing in the 2020 litigation repeated Hood's disagreement with the College and courts as to whether he was entitled to documents he deemed "responsive"—meaning responsive to his 2019 public records request. CP at 9,115-19. Finally, in

his petition for review to the Washington Supreme Court, Hood argued that "as new information became available" over the course of the 2020 litigation, the College "had an obligation to modify its response [to Hood's 2019 litigation request]." CP at 147-48.

This language fails to distinguish Hood's "litigation requests" as independent of his 2019 public records request. It stands in clear contrast to the language in *O'Dea*, where O'Dea explicitly stated in his complaint that the attached letters were public records requests. Here, Hood's "litigation requests" repeatedly refer to his previous 2019 request—they do not make clear that they are unanswered, standalone public records requests like those in *O'Dea*. Rather, like in *Germeau*, where the language of Germeau's letter failed to identify a public records request independent of the surrounding investigation, here, Hood's language fails to illustrate the existence of a public records request independent from arguments about his 2019 request.

Hood's "litigation requests" were discovery requests that invoked the civil rules or legal briefing arguing about his 2019 request. Hood expressed dissatisfaction with the College's and courts' interpretation of his 2019 public records request, but he did not make a new public records request. Holding otherwise would be absurd and would cause discovery disputes and legal briefing in PRA litigation to become an endless breeding ground for new public records requests. Parties would be obligated to scour pleadings in PRA cases to avoid missing a "litigation request" that could be the basis for another PRA lawsuit.

b.      Format

Second, the format of Hood's request fails to provide fair notice. Hood's "litigation requests" are a far cry from *O'Dea*, where the letters were clearly labeled "'PUBLIC RECORDS

17

REQUEST.'" 19 Wn. App. 2d at 72-73. Instead, Hood's "litigation requests" were expressly labeled as various pleadings or discovery requests, rather than public records requests.

        c.      Recipient

Third, the recipient of the request also disfavors a finding of fair notice. The fact that Hood neither sent nor addressed his "litigation requests" to the College's public records officer, does not alone "render his claim fatal." *Germeau*, 166 Wn. App. at 806 n.17. However, Hood's "litigation requests" were litigation documents sent to the College, its counsel, or the courts during active litigation over his 2019 public records request. The context in which these recipients received the "litigation requests" did not suggest there was any new, independent public records request.

        2.      <u>Characteristics of the requested records</u>

The fair notice factors relating to the characteristics of the records are whether the request was for specific records, as opposed to information about or contained in the records; whether the requested records were actual public records; and whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority. *O'Dea,* 19 Wn. App. 2d at 81. The first two factors favor a finding of fair notice. Hood's "litigation requests" sought specific and actual public records, namely Board minutes and other documents Hood deemed responsive to his 2019 public records request. However, like in *Germeau*, we find it dispositive that the College reasonably interpreted Hood's requests as discovery requests or legal arguments pertaining to its initial response to his 2019 public records request.

Hood relies heavily on *O'Dea* again. However, in that case, "when read in context with the substance of the complaint, it was obvious that the plaintiffs had already attempted to submit [the attached letters] as public records requests." 19 Wn. App. at 81-82. The complaint in *O'Dea*

"explicitly referenced the attached letters" that were clearly labeled "'PUBLIC RECORDS REQUEST,'" and made obvious that the plaintiffs were awaiting a response to those letters. *Id*. at 72-73, 82. Because the letters were clearly distinguishable public records requests awaiting response, the City's failure to respond was unreasonable. *Id*. at 82.

In contrast, Hood's "litigation requests" existed in the context of a lawsuit over his 2019 public records request, which the College had already received and responded to. The "litigation requests" consist of small excerpts of discovery documents and legal briefing. Further, request for production 23 explicitly drew on non-PRA legal authority, the civil rules of discovery. Thus, because of the surrounding context in which the "litigation requests" were made and Hood's failure to distinguish his "litigation requests" as independent from his 2019 public records request, it was reasonable for the College to think that Hood was requesting documents under the authority of the civil rules or making arguments in civil litigation about the scope of his 2019 request, not making a new public records request.

In sum, we conclude that under the fair notice factors, Hood's "litigation requests" did not give the College fair notice he was seeking records under the PRA, and thus, these requests were not public records requests.

## IV. OTHER ARGUMENTS

Hood further argues that because, in his view, request for production 23 was a public records request, the PRA applies and the College cannot refuse to respond to it on the grounds that it was outside the scope of discovery in the litigation over his 2019 public records request. This argument fails because, as explained above, we find that request for production 23 was not a public records request in the first instance.

Additionally, Hood points to the PRA's strongly worded command that it be "liberally construed" to encourage us to hold that his "litigation requests" are actually public records requests. RCW 42.56.030. However, when we interpret the PRA "[w]e . . . avoid absurd results." *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Importantly, "we endeavor to provide clear and workable guidance to agencies insofar as possible." *Id*. For reasons we explained above, requiring agencies to interpret discovery requests and legal arguments that are not clearly and expressly labeled as new public records requests would be absurd and unworkable.

Finally, Hood argues that we should reverse and remand for the parties to have an opportunity to develop more evidence. But Hood does not identify what evidence or arguments he would add that have not already been presented to the trial court and included in this record. Because Hood was able to fully explain his "litigation requests" to the trial court in this record, and because we resolve this case on the legal question of what constitutes a public records request, we need not remand for further proceedings.

## COSTS AND ATTORNEY FEES

Because Hood does not prevail in his action against the College and because unrepresented parties are not entitled to attorney fees, Hood is not entitled to costs or attorney fees on appeal under the PRA. RCW 42.56.550(4). Hood also seeks attorney fees on remand, but because we affirm, we are not remanding and Hood is not entitled to fees at the trial court level either. In his reply brief, Hood claims that he is entitled to costs and "consulting attorney fees" based on RAP 18.1, because the College has been intransigent. Reply Br. of Appellant at 15. We reject this basis for costs and attorney fees on appeal as well.

58362-3-II

## CONCLUSION

We affirm. We also decline Hood's request to remand and we decline to award costs and attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, J.

Cruser, C.J.