[No. 40265-0-I. Division One. June 22, 1998.]

LANCE BONAMY, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

*Paul H. King*, for appellant.

*Mark H. Sidran, City Attorney*, and *Patricia E. Neller-moe, Assistant*, for respondent.

PER CURIAM — Lance Bonamy appeals the summary judgment order that dismisses his claims against the City of Seattle for alleged violations of the Washington public disclosure act (Public Records Act). Because there were no disputed issues of material fact, the City was properly entitled to judgment as a matter of law. Accordingly, we affirm.

## FACTS

In 1995, Bonamy was employed at Seattle City Light as a maintenance laborer. In December of that year, he learned that he was being investigated for having allegedly harassed a fellow employee. After obtaining the results of that investigation, Bonamy sent an e-mail inquiry about the status of his personnel files and the extent to which information is available to employees who have had an internal complaint filed against them. Within a matter of hours, he received the following two e-mail replies:

Lance,

I can give you a copy of everything that's in your personnel file. To get a copy you need to come in in person to fill out and sign a form.

Please let me know ahead of time when you are coming to pick up your personnel file copy so I can have them ready for you.

As to your 2nd and 3rd question, other employee files that are kept are ADA and EEO complaint files. I don't handle these files but I know for a fact that these files are confidential. I'm not sure if these files are available to you so I'm also forwarding this message to Kathleen Grauman, City Light EEO Officer, and she can answer these questions for you . . . .

Lance,

I'm responding to part of your question below. If an employee files an internal EEO complaint, the accused is notified. If an employee raises an issue within their division, the division management handles the matter. I do not currently have an EEO complaint on file which involves accusations about you. If you have further questions, please phone me . . . .

The next day, February 8, Bonamy also corresponded by e-mail with Shelly Cohen, the City Light Human Resources Director:

[From Lance] I have reviewed the [Department Policy and Procedures] for the department. I can not find how a Director proceeds to investigate their employees on anything.

This seems like a common practice that would have guidelines, what is the procedure.

[To Lance] I need a little more context to understand your request. What kind of investigation are you referring to?

[From Lance] That is a good question. What kinds of investigations do Directors do on their employees?

In a written memo dated February 12 and addressed to Shelly Cohen, Bonamy stated:

I want to know what policy guidelines govern investigations into employee conduct, specifically how management investigates a personal complaint by one employee against another. Are they the same, or how are they different, when the complaint is brought by someone in management, charging an em-

ployee with any kind of workplace misconduct, insubordination, or breach of policy?

Please cite for me the references to the controlling regulations, so that I can look them up. I suppose that regulations on several levels may apply: departmental, municipal, state, federal. If you are aware of specifically applicable legislation or case law, please include that too.

In addition, an informal explanation of actual local practice in such matters would be helpful. I would not expect such an explanation of uncodified practice to be complete, but there should be some consistent pattern.

As your office deals with such matters regularly, the material should be so familiar as to be available without too much trouble.

In a memorandum to Bonamy dated February 28, Shelly Cohen explained that "management had a general responsibility to follow up on any information that comes to its attention that would indicate there is a violation of a policy, procedure, law or regulation," that the applicable policies or procedures may be different depending upon the type of investigation being conducted, that not every complaint resulted in a formal investigation, and that "[t]here are certain constraints within which management must act; these constraints come from a variety of sources and more than one may apply in a given situation." She also gave specific examples of how procedures differed depending upon the type of investigation being conducted. Ms. Cohen concluded her remarks by stating:

The question that you ask is so broad, however, that it is virtually impossible to answer fully short of a treatise on employment law. If you have questions or concerns about how a particular situation is being handled, I urge you to contact your HR Analyst. I believe the analyst assigned to your unit is . . . .

Bonamy also exchanged several written memoranda with the Superintendent of Seattle City Light about his concerns. He eventually sued the City for alleged violations of the

Public Records Act. He also sought reasonable attorney's fees and statutory penalties.

The City moved for summary judgment. After considering the matter, the court granted summary judgment in favor of the City and against Bonamy. This appeal followed.

## DECISION

 The issue on appeal concerns whether the superior court erroneously granted the City's motion for summary judgment. Bonamy contends the court erred in summarily dismissing his claims against the City. We review de novo the superior court's grant of summary judgment, using the same legal standard as that court.[1] An order granting summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] Factual issues may be decided on summary judgment "when reasonable minds could reach but one conclusion from the evidence presented."[3] In reviewing a summary judgment order, we consider the facts in a light most favorable to the party opposing summary judgment.[4]

Bonamy contends that the City violated the Public Records Act by failing to disclose certain policy guidelines or procedures he requested. He argues that his initial e-mail message to Shelly Cohen was a request for public records[5] and that his February 12 memo to Cohen clarified

---

[1]*Hill v. Department of Transp.*, 76 Wn. App. 631, 637, 887 P.2d 476, *review denied*, 126 Wn.2d 1023 (1995).

[2]CR 56(c).

[3]*Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 47, 846 P.2d 522 (1993) (quoting *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 353, 779 P.2d 697 (1989)).

[4]*Baker v. Schatz*, 80 Wn. App. 775, 782, 912 P.2d 501, *review denied*, 129 Wn.2d 1031 (1996).

[5]Both parties agree that the entire episode between Bonamy and the City involves, at best, a single request for public records.

that request[6] such that the City was required to disclose the policy guidelines that specify how management investigates any complaint by one employee against another. Because the City waited until after he filed this lawsuit to comply with that request, Bonamy argues that his claims against the City should not have been dismissed.

■ The Public Records Act (the act), RCW 42.17, "is a strongly worded mandate for broad disclosure of public records."[7] It requires that all public records be available for inspection and copying.[8] To ensure such disclosure, RCW 42.17.270 provides:

> Public records shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person. Agencies shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request except to establish whether inspection and copying would violate RCW 42.17.260(5) or other statute which exempts or prohibits disclosure of specific information or records to certain persons. Agency facilities shall be made available to any person for the copying of public records except when and to the extent that this would unreasonably disrupt the operations of the agency. Agencies shall honor requests received by mail for identifiable public records unless exempted by provisions of this chapter.[9]

The provisions of the act are to be construed liberally to promote complete disclosure of public records.[10] "The mandate of liberal construction requires the court to view with caution any interpretation of the statute that would

---

[6]Bonamy concedes that he "made no further clarification of his record request beyond his February 12th memo to Shelly Cohen." Appellant's Reply Br. at 7.

[7]*Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 33, 769 P.2d 283 (1989).

[8]*Overlake Fund v. City of Bellevue*, 70 Wn. App. 789, 793, 855 P.2d 706 (1993), *review denied*, 123 Wn.2d 1009 (1994).

[9](Footnote omitted.)

[10]*Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993).

frustrate its purpose."[11] As a threshold matter, however, the act only applies when public records have been requested. In other words, public disclosure is not necessary until and unless there has been a specific request for records.

While Bonamy in his correspondence with Cohen clearly requested information about certain employment-related policies, he never once requested the policies themselves. An important distinction must be drawn between a request for information about public records and a request for the records themselves. The act does not require agencies to research or explain public records, but only to make those records accessible to the public.[12] Nor does the act require public agencies to be mind readers. A public agency cannot be expected to disclose records that have not yet been requested. To hold otherwise would place public agencies in an untenable position.

If Bonamy truly wanted the City to provide him with certain policies, he could easily have said so. Rather than state, as he did, that he wanted to "know" what policy guidelines govern investigations into employee conduct and "how" they differ from other related policies, Bonamy could simply have requested that the City "give" or "send" him a copy of the policy guidelines governing investigations into employee conduct. In fact, Bonamy made exactly that type of request on February 6 when he wrote "I would like to request a copy of all my personnel files." As to that specific request, it is quite revealing that the City responded within hours and told him how he could obtain those files.

Our holding should not be viewed as a means by which state and local agencies can deny the public access to records. Nevertheless, it would be untenable to hold the City liable for costs and statutory penalties in this case when Bonamy never made a specific request for any public records. Because Bonamy never requested the policy guide-

---

[11]*ACLU v. Blaine Sch. Dist. No. 503*, 86 Wn. App. 688, 693, 937 P.2d 1176 (1997).

[12]*Id.* at 696 ("Access is the underlying theme of the act.").

lines he now claims the City failed to provide, he has not established a violation of the act.

Even assuming Bonamy's February 8 e-mail message to Cohen was a request for written records, the City was perfectly justified in seeking clarification of that request. RCW 42.17.270 requires disclosure only when there has been a request for "identifiable public records."

Bonamy contends that he "complied with the identifiability requirement of the statute." No Washington court has decided what constitutes "identifiable public records" within the meaning of the act. This language is virtually identical to that previously contained in the federal Freedom of Information Act (FOIA).[13] Because of the similarities, interpretations of the FOIA are helpful in construing the language of our act.[14] In interpreting the FOIA, federal courts have held that this requirement of identification is satisfied when there is "a reasonable description enabling the government employee to locate the requested records."[15]

Bonamy relies almost exclusively upon the following language in his February 12 memo to support his argument that the records he was seeking were sufficiently identified:

> I want to know what policy guidelines govern investigations into employee conduct, specifically how management investigates a personal complaint by one employee against another. Are they the same, or how are they different, when the complaint is brought by someone in management, charging an employee with any kind of workplace misconduct, insubordination, or breach of policy?

---

[13]As initially enacted, the FOIA included a requirement that a request for disclosure specify "identifiable records." *Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935, 938 (D.C. Cir. 1970). The FOIA has since been amended to read that federal agencies must make records available only upon a request which "reasonably describes" the records sought. 5 U.S.C.A. § 552(a)(3).

[14]*Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

[15]*Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935, 938 (D.C. Cir. 1970).

Please cite for me the references to the controlling regulations, so that I can look them up.

Bonamy argues that the language in this memo was specific enough to identify for the City the class of document he was seeking. Even assuming that were true, however, Bonamy concedes that this written request was "for generic policy guidelines on any type of investigation."[16] Given the broad nature of that request, Bonamy can hardly be said to have clarified the February 8 e-mail to Cohen as he was required to do under RCW 42.17.320.

Bonamy responds by stating that the City failed to comply with the strict time requirements of that statute. RCW 42.17.320 requires public agencies to respond promptly to requests for public records. The statute provides in pertinent part:

> Responses to requests for public records shall be made promptly by agencies . . . . Within five business days of receiving a public record request, an agency . . . must respond by either (1) providing the record; (2) acknowledging that the agency . . . has received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (3) denying the public record request. Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request. In acknowledging receipt of a public record request that is unclear, an agency . . . may ask the requestor to clarify what information the requestor is seeking. If the requestor fails to clarify the request, the agency . . . need not respond to it.

Bonamy contends that the City's failure to timely respond to his February 12 memo "was itself a violation of the [act]." However, this statute, by its very terms, only applies when public records have been requested.

---

[16]Appellant's Opening Br. at 12.

Here Bonamy only requested information from the City. Nor did Bonamy ever clarify his February 8 requests in any meaningful way.[17] Under the plain language of the statute, the City was not required to comply with Bonamy's requests. Accordingly, the court properly granted the City's motion for summary judgment.

Finally, Bonamy contends that the court below erred by failing to award him his reasonable attorney fees and penalties under the act. He relies on RCW 42.17.340(4), which provides:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

For purposes of determining who prevailed under this statute, the prevailing party "is the one who has an affirmative judgment rendered in that party's favor at the conclusion of the entire case."[18] As previously discussed, the trial court properly dismissed Bonamy's claims against the City. Because Bonamy was not the prevailing party below, he was not entitled to an award of fees and statutory penalties.[19] For similar reasons, he is not entitled to recover his costs on appeal.[20]

---

[17]As it turned out, the City sent Bonamy copies of policies governing discrimination and sexual harassment investigations, neither of which were relevant to the investigation in Bonamy's case.

[18]*Yacobellis v. City of Bellingham*, 64 Wn. App. 295, 304, 825 P.2d 324 (1992).

[19]*See Doe I v. State Patrol*, 80 Wn. App. 296, 305, 908 P.2d 914 (1996).

[20]*See Amren v. City of Kalama*, 131 Wn.2d 25, 34-35, 929 P.2d 389 (1997).

413

Affirmed.

Review denied at 137 Wn.2d 1012 (1999).