[No. 62171-8-I.   Division One.   June 22, 2009.]

LANA BEAL ET AL., *Appellants*, v. THE CITY OF SEATTLE, *Respondent*.

*Richard A. Poulin* (of *SCOPE Law Firm, PLLC*), for appellants.

*Thomas A. Carr, City Attorney*, and *Mary F. Perry, Assistant*, for respondent.

¶1 AGID, J. — While meeting with the city of Seattle's (City) Fleets and Facilities Department (FFD) director, members of the public orally requested information about

the City's plans to mitigate environmental damage caused during construction of its Joint Training Facility (JTF). Although the City ultimately responded to a later written records request, the plaintiffs filed suit claiming that the City did not respond to their oral request within five business days as required by the Public Records Act (PRA), chapter 42.56 RCW. The trial court granted the City's motion for summary judgment, holding that the plaintiffs did not request public records at the meeting. Because the request was unclear and did not ask for public records, we affirm.

## FACTS

¶2 FFD "oversaw the construction of the Joint Training Facility for City of Seattle police and firefighters in White Center. During construction of the JTF, John Beal, who ran I'M A PAL, an organization concerned about the Hamm Creek watershed, reported to the Army Corps of Engineers that the City had not obtained a necessary permit for construction." The Corps issued a stop work order and threatened enforcement action. The Seattle City Council approved a settlement agreement with the Corps on November 20, 2006. The Duwamish River Cleanup Coalition (DRCC) objected to the mitigation provisions of the settlement. To that end, DRCC representatives and other interested persons, including appellants Lana Beal, BJ Cummings, James Rasmussen, and Greg Wingard (Citizens), met with Brenda Bauer, FFD's director, on December 12, 2006, to discuss DRCC's concerns.

¶3 On January 24, 2007, Citizens met with Bauer again to discuss FFD's response to DRCC's suggested mitigation plan improvements. Bauer explained that FFD could not implement DRCC's suggestions. In response, Cummings asked Bauer to provide

documentation supporting her asserted inability to implement our suggestions or any of the alternatives to their proposal. I specifically asked Director Bauer to provide all documentation

of the mitigation alternatives that had been considered by [FFD]; all existing information [FFD] believed supported its position that the mitigation alternatives [Citizens] proposed at the JTF site were not feasible; and records containing specific information about the characteristics of the site that the Coalition's experts would need to provide meaningful input to the ongoing design of mitigation projects, including the Department's records containing information about the stormwater volumes generated on the site, the relevant water table levels, and groundwater infiltration into the pond.

Cummings "did not reference the Public Records Act and likely used the word 'information' rather than 'records,' but [ ] was certain Director Bauer understood that [Cummings] had asked her to show us copies of written documentation and reports we both knew existed."[1]

¶4 Wingard "thought it was obvious and understood by all present [at the January 24, 2007 meeting] that we had asked the Department to produce the written information in its files that the Director held up as supporting its position. I did not hear the Department's Director or staff ask for clarification, or say anything indicating that they didn't understand what we wanted them to give us for future use."

¶5 Bauer "did not hear anyone ask for public records during the January 24 meeting." Emelie East, the director of council relations/senior advisor to the mayor of the city of Seattle, was at the January 24 meeting and also "did not hear anyone ask for public records."

¶6 On February 3, 2007, Cummings e-mailed East, asking her to resend any e-mails she had attempted to send Cummings regarding the JTF discussions with the City because Cummings had experienced e-mail problems. Cummings did not mention a public records request. East replied on February 7, 2007, with a request that Citizens proceed by putting their mitigation suggestions in writing so the City's engineers could review the feasibility of

---

[1] (Emphasis omitted.)

implementing those suggestions. Cummings replied to East the same day, stating that

> [i]t was our understanding that the next step was for the Fleets and Facilities [Department] to provide a written response to our previous list of suggestions, including any data relevant to considerations of feasibility, e.g., stormwater volumes generated on site, water table levels, groundwater infiltration into the pond, etc. This information was not provided by the City during our last meeting, and would serve as the basis for more detailed recommendations from our consultant. In the absence of this data, I can ask our consultant to prepare a generalized description of her recommended approach to integrating habitat into the stormwater pond, but it will not be specific to the site conditions and engineering considerations until these are provided by the city.

On February 9, 2007, Bauer e-mailed Cummings, affirming that

> I did say I would look into providing you with additional information, and this is what I have discovered. We have some records from the original design team related to water table and the stormwater pond from the original design that I can provide to you. . . . [T]he records developed since then were developed as attorney work product in anticipation of litigation. We still have claims related to the design issues on this project, and the City Attorney hired a number of consultants to prepare for potential claims settlement or litigation. The City Attorney won't release this information, or have these firms consult with you, as it would jeopardize the City's legal position.[2]

¶7 On February 11, 2007, Wingard responded to Bauer's February 9 e-mail, interpreting it as improper denial of pubic records under the PRA. In her February 13, 2007 reply, Bauer wrote, "If you are seeking records under RCW

---

2 (Emphasis omitted.)

42.17 [sic],[3] please provide a specific request so that I can provide a formal response." Cummings replied on the same day, describing the requested documentation and information and stating that "[t]his information has been, and is again, requested under the Washington State Public Disclosure Act." On February 15, 2007, Bauer responded to Cummings, stating, "With regard to your most recent e-mail below, I now understand that you wish to make your further inquiries as public disclosure requests. I estimate that it will take until about April 12, 2007 to assemble the various documents which fall within the scope of your request and to review which of them may be either exempted or precluded from disclosure under applicable law."[4] FFD hired a paralegal from March 11, 2007 to April 22, 2007 to process the records request. It then gave the records to Citizens, who make no complaint about the records they received.

¶8 On September 13, 2007, Citizens filed an amended complaint alleging that the City failed to promptly respond to their records request, wrongfully refused to make the records promptly available, failed to provide a reasonable estimate of time required to respond, and wrongfully denied them an opportunity to inspect or copy public records. The City moved for summary judgment, and the trial court heard oral argument on the motion. Before the trial court issued its July 14, 2008 order granting the City's motion, Citizens submitted a declaration from Sara Nelson, who was present at the January 24, 2007 meeting, stating that during the course of the meeting

> Ms. Cummings asked to see the written documents containing the specifications about the JTF Site compiled by the Department's engineers – specifically, information regarding the hydrology of the site, the retention pond, and whether or not the

---

[3] The public records portion of the public disclosure act, former chapter 42.17 RCW (2004), was recodified as the PRA, chapter 42.56 RCW, in 2005. *See* RCW 42.56.001.

[4] (Emphasis omitted.)

pond could fulfill the dual purpose of wildlife habitat and storm/surface water drainage.

"The meeting concluded with Ms. Cummings, Mr. Rasmussen and Mr. Wingard requesting written documents containing detailed information about several technical issues, including the hydrology of the pond ('how high is the water table' is one specific question [Nelson] remember[s]) and how engineering could salvage the dual purpose of the pond." Citizens also submitted a supplemental declaration from Cummings following the summary judgment hearing, in which she indentified the specific documentation she remembered requesting at the January 24, 2007 meeting.

¶9 Ruling on the City's motion for summary judgment, the trial court found that Citizens "did not make a valid public records request at the January 24, 2007 meeting" and concluded that the "City did not violate the Public Records Act in responding to [Citizen's] request." Citizens moved for reconsideration, which the trial court denied after considering their supplemental declarations. Citizens appealed but abandoned their arguments that the trial court erred by dismissing their unreasonable time estimate claim and by denying their motion for reconsideration. Thus, the only issue remaining on appeal is the trial court's dismissal of the Citizen's claim that FFD violated the PRA by failing to respond to their request within five days.

## DISCUSSION

¶10 Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[5] Factual issues may be decided on summary judgment " 'when reasonable minds could reach but one conclusion from the evidence

---

[5] CR 56(c).

presented.' "[6] When the record consists only of affidavits, memoranda of law, and other documentary evidence, we review summary judgment orders under the PRA de novo, undertaking the same inquiry as the trial court.[7]

■■ ¶11 Under the prompt response provision of the PRA, an agency must respond to a request for public records within five business days of receipt by either "(1) providing the record; (2) acknowledging that the agency . . . has received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (3) denying the public record request."[8] The prompt response requirement does not apply until a requestor makes a specific request for identifiable public records.[9] A "public record" is "any writing containing information relating to the conduct of government . . . regardless of physical form or characteristics."[10] An identifiable public record is one for which the requestor has given a reasonable description enabling the government employee to locate the requested record.[11] Although requestors are not required to cite to the PRA itself, they must state their request

---

[6] Bonamy v. City of Seattle, 92 Wn. App. 403, 407, 960 P.2d 447 (1998) (quoting Van Dinter v. City of Kennewick, 121 Wn.2d 38, 47, 846 P.2d 522 (1993)), review denied, 137 Wn.2d 1012 (1999).

[7] Spokane Research & Def. Fund v. City of Spokane, 155 Wn.2d 89, 97, 117 P.3d 1117 (2005); Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994) (PAWS II).

[8] RCW 42.56.520. "The quick response is necessary so the requestors will not think they are being led along only to have their requests ultimately denied." Wood v. Lowe, 102 Wn. App. 872, 881, 10 P.3d 494 (2000).

[9] See RCW 42.56.080 ("Public records shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person."); Lowe, 102 Wn. App. at 878; Bonamy, 92 Wn. App. at 409.

[10] RCW 42.56.010(2). The definition of a "writing" includes "existing data compilations from which information may be obtained or translated." RCW 42.56.010(3).

[11] Lowe, 102 Wn. App. at 878 (quoting Bonamy, 92 Wn. App. at 410).

with sufficient clarity to give the agency fair notice that it has received a request for a public record.[12]

¶12 Citizens argue that they made an oral request for public records at the January 24, 2007 meeting, making FFD's February 15, 2007 response untimely. The City counters that the Citizens' declarations at most show that Citizens requested information, not public records. And the City argues that Citizens did not communicate their request clearly enough to put the City on notice that they were requesting public records, meaning that the trial court properly decided as a matter of law that Citizens did not make a records request at the January 24 meeting.

¶13 In *Wood v. Lowe*, an agency employee wrote a letter to her boss, the agency's director, requesting her personnel file and any other information and documentation related to her employment.[13] Twelve days after delivering the letter, she filed an ex parte motion for the agency to show cause why it had not produced the requested documents.[14] The agency released the personnel file one day after the superior court ordered a show cause hearing.[15] After a telephonic hearing, the trial court denied the employee's claim for attorney fees, costs, and sanctions.[16] Reviewing the trial court's order de novo, the *Lowe* court held that the employee's request for information was not a request for an identifiable public record and that the request for documentation lacked any "meaningful description helpful for the person charged with finding the record."[17] The court also held that the employee's personnel file, while identifiable, did not qualify as a public record. The request for the personnel file did not put the agency on notice that she was

[12] *Id.*

[13] 102 Wn. App. 872, 874-75, 10 P.3d 494 (2000).

[14] *Id.* at 875.

[15] *Id.* at 876.

[16] *Id.*

[17] *Id.* at 879.

requesting public records because her request could have been made under another statute requiring employers to give employees their personnel files.[18]

¶14 In *Bonamy*, a city of Seattle employee sent an e-mail asking about the extent to which information is available to employees who have had internal complaints filed against them.[19] The employee followed up with a question about the policy guidelines governing investigations into employee conduct.[20] The employee sued the City, alleging that it failed to disclose the policy guidelines he requested, and the City successfully moved for summary judgment.[21] This court determined that the employee requested information about certain employment related policies but did not request the policies themselves.[22] Distinguishing between a "request for information about public records and a request for the records themselves," this court held that the City did not violate the PRA because it received only a request for information, not a request for a public record.[23]

¶15 Conceding that individuals may make oral requests for public records, the City also cites to the attorney general's comments under the PRA model rules for the proposition that oral requests are "problematic."[24] While the model rules are not binding on the City,[25] we agree that they contain persuasive reasoning. As this case demonstrates, orally requesting public records makes it unneces-

---

[18] *Id.* at 880.

[19] *Bonamy v. City of Seattle*, 92 Wn. App. 403, 404, 960 P.2d 447 (1998), *review denied*, 137 Wn.2d 1012 (1999).

[20] *Id.* at 405-06.

[21] *Id.* at 406-07.

[22] *Id.* at 407-12.

[23] *Id.* at 409.

[24] WAC 44-14-03006 ("[F]or some requests such as larger ones, oral requests may be allowed but are problematic.").

[25] WAC 44-14-00001 ("The attorney general encourages state and local agencies to adopt the model rules (but not necessarily the comments) by regulation or ordinance."). The City does not argue that it has adopted the model rules or the related comments.

sarily difficult for citizens to prove that they in fact requested public records. And ambiguous oral requests made during the course of meetings puts agencies in the awkward position of contemporaneously parsing the difference between a request to collaboratively share information and a request that potentially triggers a duty to produce records or pay fines and attorney fees.

¶16 Here, the evidence submitted by Citizens is not sufficient, as a matter of law, to show that Citizens made an unambiguous request for identifiable public records. The parties called the January 24 meeting to discuss FFD's response to DRCC's suggested mitigation plan improvements. With the purpose of the meeting in mind, Cummings' response to Bauer's refusal to adopt the mitigation suggestions shows that Citizens wanted to know why Bauer refused and what information Bauer relied on in coming to her decision. Citizens' demand that the City "prove it" did not amount to a clear request for public records. All Citizens' declarations establish is that they wanted Bauer to compile the information supporting her position or create a document explaining why Citizens' suggestions were not feasible. Because new documents or a synthesis of existing documents is not subject to the PRA,[26] the City could have responded to Citizens' demand during the January 24 meeting without producing any public records. Thus, we hold that the City did not receive fair notice that the request was for specific documents under the PRA.

¶17 The evidence also shows that Citizens wanted DRCC to produce data that their consultant could use to formulate a site-specific mitigation plan. Cummings' February 3 e-mail underscores the ambiguous nature of Citizens' January 24 request. In it, Cummings refers to "the next step" as the FFD's "written response" to their suggestions and data relevant to improving those suggestions. As discussed above, Citizens cannot compel an agency

---

[26] See Smith v. Okanogan County, 100 Wn. App. 7, 14, 994 P.2d 857 (2000) (Citizens may not compel agency to create new documents or synthesize information into some sort of compilation.).

to create a new document, in this case a written response to DRCC about FFD's mitigation plan decision, under the PRA.[27] Similarly, Bauer's reply to Cummings demonstrates her understanding that Citizens were requesting information, not specific records. In her reply, Bauer explains what she discovered when she looked into providing Citizens with information. Nelson's declaration supports the conclusion that Cummings asked FFD to produce information about the JTF site's specifications. A request for information about public records or for the information contained in a public record is not a PRA request.[28]

¶18 Nelson asserts that Cummings also asked for the documents containing the desired information, but Nelson's declaration does not demonstrate that Citizens unambiguously asked for the public records, as opposed to requesting the information contained in those records. Nothing in the evidence before the trial court establishes that Citizens put FFD on notice that they were requesting identifiable public records under the provisions of the PRA. As was the case in *Lowe*, the City could have responded to Citizens' request without producing any records under the PRA.

¶19 The PRA does not require written requests, but it does require that requests be recognizable as PRA requests.[29] The request's medium may be relevant to its clarity, and an oral statement during the course of a meeting is less clear than a written request would have been. Citizens failed to put the agency on notice at the meeting or in their early e-mails that they were requesting public records. Their request could have been, and apparently was, a request that the City simply provide feedback and information. As such, this request, like the request in

---

[27] *Id.*

[28] *Lowe*, 102 Wn. App. at 879; *Okanogan County*, 100 Wn. App. at 15 (holding that a request, among other related requests, for a list of all available attorneys that the court could appoint to represent him at a show cause hearing was a request for information, not a request for public records); *Bonamy*, 92 Wn. App. at 409-10.

[29] *See Lowe*, 102 Wn. App. at 878.

*Lowe,* was ambiguous. The trial court properly ruled that Citizens did not make a PRA request at the January 24 meeting.

¶20 Citizens request attorney fees on appeal. Attorney fees on appeal are recoverable under the PRA for prevailing parties.[30] Because Citizens do not prevail here, they are not entitled to attorney fees.

¶21 We affirm.

DWYER, A.C.J., and BECKER, J., concur.

---

[30] RCW 42.56.550(4); *Progressive Animal Welfare Soc'y v. Univ. of Wash.,* 114 Wn.2d 677, 690, 790 P.2d 604 (1990) (*PAWS* I).