# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 49884-7-II |
| Appellant, | |
| v. | |
| CITY OF TACOMA, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Arthur West appeals from the trial court's dismissal of his Public Records Act (PRA) claim against the City of Tacoma seeking "threat assessments" related to a liquid natural gas (LNG) terminal being built in the Tacoma port. We conclude that the City silently withheld records in response to West's request. We reverse the dismissal of West's claim and remand to the trial court for further proceedings.

## FACTS

### I.    PRA REQUESTS

Three different parties, John Carlton, West, and Derrick Nunnally of the Tacoma News Tribune (TNT), made PRA requests concerning the LNG terminal Puget Sound Energy (PSE) was constructing in the Port of Tacoma.

On March 1, 2016, Carlton requested from the City PHAST[1] quantitative modeling data for the LNG terminal. PSE moved for a temporary restraining order (TRO) enjoining production

---

[1] A description of PHAST on its company's website describes it as a "comprehensive process hazard analysis software system for process safety management in all stages of design and operation." https://www.dnvgl.com/services/process-hazard-analysis-software-phast-1675. One of its applications is to analyze consequences of flammable, fire, explosion, and toxic hazards.

of the requested records. The court granted the TRO, but then denied longer-term injunctive relief

and stayed its ruling pending PSE's appeal to this court.

On April 13, the day before PSE's motion, West submitted a PRA request to the City

seeking the following documents:

> 1. Records of threat assessments submitted to the City and or the Tacoma Fire
> Department in relation to the permitting process for the proposed LNG terminal on
> property leased from the Port of Tacoma. 2. Any internal safety or threat
> assessments related to this project. 3. Any similar records for the Port's proposed
> methanol plant.

Clerk's Papers (CP) at 75. On April 18, the City responded and informed West that responsive

documents or an update to his request would be available by May 3.

West moved to intervene in the Carlton case "[a]s a citizen who has requested the records

at issue." CP at 86. At the April 29 hearing on the intervention motion, West stated,

> If there's going to be an order issued in this case involving the records of the City
> that binds me then I'd ask to intervene in this but I'd ask this be limited to the
> records held by the City at this point. . . .
> So, I guess I would ask that I'd be allowed to intervene in this case for the
> purpose of determining the issues involving the records that the City holds.

CP at 92. The City did not object to West's intervention, but it stated that it understood West's

intervention to be limited to records already at issue in the Carlton case, regardless of the scope of

West's original request. It also stated that it was "not completely clear" about the scope of West's

original request or whether there was "complete . . . crossover" between the cases. CP at 93. West

did not clarify what the scope of his independent request entailed. PSE did not object to West's

intervention and the trial court granted it.

On May 3, the City responded to West's PRA request. It stated that it interpreted the first

of his three requests to include the same PHAST modeling data that Carlton had requested and

stated that information was subject to the temporary restraining order in the Carlton case and could

not be disclosed. It stated that no responsive records existed as to his second request. It provided West access to documents in response to his third request, none of which is relevant to this appeal.

In its response, the City stated, "This request is considered closed. However, if you believe there are other records responsive, or this does not meet the scope of your request, please contact me at your earliest convenience." CP at 98. The City did not mention the existence of a siting study report or a fire protection evaluation, both created by a contractor for PSE. The siting study report and the fire protection evaluation contained extensive data about potential LNG spill scenarios, data about preventing and handling them, a discussion of fire and explosion hazards associated with spills, and the facility's hazard detection mechanisms. West did not reply to the City's response to his request.

On May 17, Nunnally submitted a PRA request related to the LNG terminal. He requested "all documents and correspondence submitted to or sent by the city of Tacoma, including the Tacoma Fire Department, related to safety and security plans for [PSE]'s [LNG] facility." CP at 103. The City interpreted Nunnally's request to include the siting study report and fire protection evaluation. As in the Carlton case, PSE moved to enjoin production of the requested documents. The trial court denied relief and PSE appealed.

We joined the Nunnally case with the Carlton case on appeal and issued a stay of release of all records in both cases. While the case was pending, TNT independently acquired and published the relevant documents. We deconsolidated the Nunnally and Carlton cases and dismissed both on PSE's voluntary motions. *See* Ruling Deconsolidating and Dismissing Appeal, *Puget Sound Energy, Inc. v. City of Tacoma*, No. 49517-1-II (Wash. Ct. App. Oct. 10, 2016); Ruling Dismissing Appeal, *Puget Sound Energy, Inc. v. City of Tacoma*, No. 49045-5-II (Wash. Ct. App. Nov. 3, 2016).

II.     LITIGATION

On September 2, West sued the City under the PRA for silently withholding the siting study report and fire protection evaluation that Nunnally had obtained. In October, West moved to compel the City to show cause why its response to his April 13 request did not violate the PRA.

In early November, the City sent a letter to West including a link to all the documents Nunnally had requested. It stated that "[i]t isn't the City's usual practice to re-open closed records requests, but in this case, since we are aware of your ongoing interest in the Modeling Records as well as in the full Siting Report and the Fire Protection Evaluation Report responsive to [TNT's] request, we are providing access to you at this time." CP at 121

After a hearing on November 4, the trial court denied West's show cause motion and dismissed his case with prejudice. It ruled:

> I believe the City has produced the requested documents. I think they were precluded from that production because of the action in this court and in the appellate courts. . . . I'm convinced at this point that there is no internal safety and threat assessment, and that was their response.
>        And I believe everything else that was requested both has been provided and otherwise is contained in the threat assessments submitted to the City or to Tacoma Fire Department. . . .
>        I believe the City has responded appropriately and included an opportunity for clarification which I believe they're required to do.

Report of Proceedings (RP) at 29-30. West appeals.

ANALYSIS

I.     LEGAL PRINCIPLES

The PRA is a strongly worded mandate for broad disclosure of public records. *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009). Its purpose is to increase governmental transparency and accountability by making public records accessible to Washington's citizens. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374

P.3d 63 (2016). The statute requires all state agencies to "make available for public inspection and copying all public records" that do not fall within a specific exemption. RCW 42.56.070(1). The PRA must be liberally construed and its exemptions narrowly construed to promote the public interest. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007); RCW 42.56.030.

The PRA states that "[j]udicial review of all agency actions taken or challenged . . . shall be de novo." RCW 42.56.550(3). When the record consists entirely of written and graphic material in the PRA context, "the reviewing court is not bound by the trial court's findings on disputed factual issues." *Progressive Animal Welfare Soc'y v. Univ. of Wash.* (*PAWS*), 125 Wn.2d 243, 253, 884 P.2d 592 (1994). We review the trial court's findings and decision in this case de novo.[2]

II.    SILENT WITHHOLDING

West contends that the City violated the PRA by "silently withholding" responsive records to his PRA request. He claims that the trial court erred by dismissing his case because the City failed to disclose the siting study report and fire protection evaluation prior to closing his request.[3]

When an agency refuses to allow inspection of a public record, it must "'include a statement of the specific exemption authorizing the withholding of the record . . . and a brief explanation of how the exemption applies to *the record withheld*.'" *PAWS*, 125 Wn.2d at 270 (quoting RCW

---

[2] The City urges us to follow *McKee v. Department of Corrections*, an unpublished Division Three PRA case that deferred to the trial court's findings of fact. No. 33876-2-III, slip op. at 15 (Wash. Ct. App. Aug. 16, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/338762.pdf. We choose instead to follow the guidance of the statute itself, *PAWS*.

[3] West also argues the City is estopped from arguing that the siting study and fire protection evaluation were not responsive to his original request because it ultimately produced those documents. Because of our resolution of this case, we need not and do not address West's estoppel argument.

42.17.310(4) (recodified at RCW 42.56.210(3)). Silent withholding "would allow an agency to retain a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld." *PAWS*, 125 Wn.2d at 270. The PRA "clearly and emphatically prohibits silent withholding by agencies of records relevant to a public records request." *PAWS*, 125 Wn.2d at 270. "Failure to reveal that some records have been withheld in their entirety gives requesters the misleading impression that all documents relevant to the request have been disclosed." *PAWS*, 125 Wn.2d at 270.

Silent withholding is not about the production of documents. It is about the *disclosure* of documents. *Sanders v. State* distinguished these two concepts by stating, "Records are either 'disclosed' or 'not disclosed.' A record is disclosed if its existence is revealed to the requester in response to a PRA request, regardless of whether it is produced. . . . Disclosed records are either 'produced' (made available for inspection and copying) or 'withheld' (not produced)." 169 Wn.2d 827, 836, 240 P.3d 120 (2010). West contends that the City failed to disclose the existence of the siting study report and fire protection evaluation, regardless of any obligation to produce those documents.

A.    SCOPE OF PRA REQUEST

PRA requests must be for identifiable records. RCW 42.56.080(1). "An identifiable public record is one for which the requestor has given a reasonable description enabling the government employee to locate the requested record." *Beal v. City of Seattle*, 150 Wn. App. 865, 872, 209 P.3d 872 (2009). "[A] person seeking documents under the PRA must identify or describe the documents with sufficient clarity to allow the agency to locate them." *Levy v. Snohomish County*, 167 Wn. App. 94, 98, 272 P.3d 874 (2012). "The PRA does not 'require public agencies to be

mind readers.'" *Levy*, 167 Wn. App. at 98 (quoting *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998)).

When an agency acknowledges receipt of an unclear request, it "may ask the requestor to clarify what information the requestor is seeking." RCW 42.56.520(3)(a).[4] If an agency is "unclear about what was requested, it [is] required to seek clarification." *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 727, 261 P.3d 119 (2011). If a requestor fails to respond to an agency request for clarification, the agency is not required to respond to any unclear portions of the request. RCW 42.56.520(3)(b). However, the PRA "treats a failure to properly respond as a denial." *Soter*, 162 Wn.2d at 750.

The burden of proof is on the agency to establish that any refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part. RCW 42.56.550(1).

B.    WEST'S REQUEST

In this case, West requested "threat assessments submitted to the City and or the Tacoma Fire Department" related to the LNG terminal.[5] CP at 75. He described the identifiable public records with sufficient clarity for the agency to locate them. The City has not argued that it could not locate responsive records in this case. Rather, it argues that West limited his request by his participation in the Carlton case.

---

[4] This citation is to the current version of the statute. At the time of this case, RCW 42.56.520(4) provided agencies with identical authority to seek clarification. LAWS OF 2010, ch. 69, § 2.

[5] West also requested "internal safety or threat assessments" related to the project. CP at 75. The City argues that no records responsive to this request exist. Our analysis addresses only West's first request for threat assessments "submitted to the City." CP at 75.

While arguing his intervention motion into the Carlton case, West referred to himself as "a citizen who has requested the records at issue" and stated, "If there's going to be an order issued in this case involving the records of the City that binds me then I'd ask to intervene in this but I'd ask this be limited to the records held by the City at this point." CP at 86, 92. The City had no objection "with regards to the records in this case." CP at 93.

Although West intervened in the Carlton case, he never stated that he intended to limit his independent request for "threat assessments" to the identical records Carlton requested. The City did not confirm with West that he sought only the same documents as Carlton.[6] The record contains no definitive evidence that West intended to limit his request to the documents sought by Carlton. During arguments on West's intervention motion, the City acknowledged that it was "not completely clear" about the scope of West's request, yet it did not seek clarification. CP at 93.

Several days after the hearing in the Carlton case, the City responded by e-mail to West's request. It stated that it interpreted his first request to "include" the modeling data requested by Carlton which, due to the injunction in that case, could not be disclosed. The City did not disclose the existence of any other documents. It stated that it was closing the request and told West "if you believe there are other records responsive, or this does not meet the scope of your request, please contact me at your earliest convenience." CP at 98.

West's request clearly and unambiguously applied to both the siting study report and the fire protection evaluation. Both of these public records described and analyzed potential LNG spill scenarios, fire and explosion hazards, and the facility's hazard detection mechanisms. To the

---

[6] The trial court found that the City "included an opportunity for clarification which I believe they're required to do." RP at 30. However, the only request for clarification the City provided was a chance for West to reopen the closed request if he believed the City's response did not meet the scope of his request. We do not view the City's offer as a request for clarification of an unclear request.

extent the City was unclear about the scope of West's request, it had an obligation to request clarification. Because it did not disclose the existence of responsive documents to the request, it silently withheld those documents and violated the PRA.

Because we conclude that the City violated the PRA by silently withholding records, we do not reach West's unreasonable search argument. We reverse the trial court's dismissal of West's PRA claim and remand to the trial court for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Johanson, J.