IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ELIZABETH ROBERTS and
JONATHAN ROBERTS,

        Appellants,

        v.

CITY OF SEATTLE acting through its
DEPARTMENT OF TRANSPORTATION,

        Respondent.

No. 88277-5-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, C.J. — Elizabeth and Jonathan Roberts appeal from an order that granted summary judgment in favor of the City of Seattle and dismissed their claims under the Public Records Act (PRA).[1]  Roberts[2] fails to establish that they made a recognizable request for disclosure of records under the PRA.  Because Roberts did not provide fair notice of a PRA request, the City was not obligated to comply with the disclosure requirements of the statute.  Accordingly, dismissal was proper, and we affirm.

FACTS

Elizabeth and Jonathan Roberts purchased their home in July 2021 and began the permitting process with the Seattle Department of Transportation

---

[1] Ch. 42.56 RCW.
[2] We refer to the appellants collectively here as Roberts and by their first names only as necessary for clarity.  No disrespect is intended.

(SDOT) to change the footprint of the driveway. The process has been lengthy due to the proximity of their home to a shoreline street end (SSE) owned by SDOT. After rejecting multiple design plans, SDOT agreed to meet with Roberts regarding the driveway issues.

On April 3, 2024, Roberts and their land use attorneys, Ian Morrison and Jacqueline Quarré, met with SDOT employee Joel Miller and Assistant City Attorney Patrick Downs to discuss the status of Roberts' street use permit. The parties agreed that the confidentiality afforded pursuant to ER 408[3] applied to their conversation. During the meeting, Morrison and Quarré provided "a printout of eight (8) different shoreline street ends in the City of Seattle where it appeared from aerial photos that private properties have significant driveways or encroachments in the shoreline street end adjacent to them." A few weeks before the meeting, Quarré had submitted PRA requests for permitting records related to two of the street ends in the photos but still had not received the records. During the meeting, Quarré noted difficulty finding permitting records in SDOT's permit portal. Miller agreed to look into the permit records for the eight properties, and Quarré asked for copies of those permit records when Miller found them.

---

[3] ER 408 provides the following:
> In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

After the meeting, Quarré inquired about the records in three separate e-mail messages to Downs. On April 11, Quarré sent a three-page e-mail labeled as "ER 408 . . . Follow-Up Information" regarding Roberts' address. The message included five separate topics, including the permitting records:

> 3. Permitting Records for Other SSEs
>
> Attachment 2 is a PDF copy of the document that we provided at our meeting that shows aerial snapshots of other SSEs with significant encroachments. Joel was planning to find the permitting history for the SSEs following our meeting and planned to share them with us. Are those records available? I'm not sure it is possible for us to access any of that information from SDOT's website.

Later that same day, Downs replied, "Received the documents. Thanks."

In the second e-mail, sent April 26 and entitled "additional communications and updates," Quarré stated, "I also wanted to follow-up on whether SDOT has found any permitting history on the S[S]E's that we discussed at our April 3 meeting?" She asserted in a declaration that Downs did not respond to this inquiry.

Quarré's third communication on this matter, also labeled as "ER 408 . . . Follow-Up," occurred on June 19. Near the end of the message, Quarré raised the permit issue:

> As a follow-up on this issue, Joel was planning to find the permitting history for other SSE's discussed in our meeting and planned to share them with us. We have not received any records from him, are they available? I am not sure it is possible for us to access any of that information from SDOT's website.

Downs replied to the e-mail and thanked Quarré for her message but provided no further information.

SDOT denied Roberts' driveway application on September 11, 2024, and by that time, they had yet to receive copies of the permit records. On September

25, Quarré filed a public records request for the permits related to the six identified properties not included in the request made prior to the meeting with SDOT. SDOT did not produce any documents in response to this request.

Roberts filed a lawsuit against the City of Seattle on November 6, 2024, alleging multiple violations of the PRA based on SDOT's failure to comply with the request for permitting records made during the April 3, 2024 meeting and subsequent e-mail messages. The City filed a motion for summary judgment and dismissal of the claim premised on its contention that Quarré's oral request and follow-up e-mails failed to provide fair notice that a request was being made pursuant to the PRA. Roberts filed a motion for partial summary judgment on the issue of liability and expressly requested that the court find the City liable for violating the PRA but reserve on the issue of penalties. The trial court entered an order that denied Roberts' motion for summary judgment on liability, granted the City's motion, and dismissed the matter.

Roberts timely appealed.

ANALYSIS

Roberts aver the trial court erred in its summary judgment dismissal of their claim because they made a clear PRA request for public records from SDOT and the City failed to comply. We disagree.

I.      Summary Judgment and PRA

"The PRA is 'a strongly worded mandate for broad disclosure of public records.'" *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 408,

259 P.3d 190 (2011) (plurality opinion) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). The PRA is liberally construed while its exemptions are narrowly construed. RCW 42.56.030. Unless a specific exemption applies, agencies have an affirmative obligation to disclose records requested under the PRA. *SEIU 775 v. Dep't of Soc. & Health Servs.*, 198 Wn. App. 745, 749, 396 P.3d 369 (2017).

Judicial review of agency actions under the PRA is de novo. RCW 42.56.550(3). Where the record includes only documentary evidence, we conduct the same inquiry as the trial court. *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989). PRA claims may be decided on summary judgment. *West v. Dep't of Licensing*, 182 Wn. App. 500, 505, 331 P.3d 72 (2014). Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The facts are viewed in the "light most favorable to the nonmoving party, and summary judgment is granted only if, from all of the evidence, reasonable persons could reach but one conclusion." *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citation omitted).

On a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of material fact. *Id*. Once the moving party meets this threshold burden, the nonmoving party must then present evidence of the existence of a disputed material fact in order to survive summary judgment. *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d

506, 516, 799 P.2d 250 (1990). A motion for summary judgment is properly granted if "the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case." *Atherton Condo.*, 115 Wn.2d at 516.

II.     PRA Requests and "Fair Notice"

Roberts claim that Quarré's oral request for copies of the SSE permits and three follow-up e-mail messages that contained inquiries about the permits were PRA requests that triggered the City's responsibilities under the statute.

The PRA "only applies when public records have been requested. In other words, public disclosure is not necessary until and unless there has been a specific request for records." *Bonamay v. City of Seattle*, 92 Wn. App. 403, 409, 960, P.2d 447 (1998). A specific request for records "occurs when 'the person requesting documents from an agency . . . state[s] *the request with sufficient clarity to give the agency fair notice that it had received a request for a public record.*" *Germeau v. Mason County*, 166 Wn. App. 789, 804, 271 P.3d 932 (2012) (alterations in original) (quoting *Wood v. Lowe*, 102 Wn. App. 872, 877-78, 10 P.3d 494 (2000)). No specific format is required to make a PRA request, nor must the request specifically reference the PRA or be submitted to the designated PRA coordinator. *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 80, 493 P.3d 1245 (2021). However, "at a minimum, the PRA 'require[s] that requests be recognizable as PRA requests.'" *Germeau*, 166 Wn. App. at 805 (alteration in original) (quoting *Beal v. City of Seattle*, 150 Wn. App. 865, 876, 209 P.3d 872 (2009)). "[T]he request must state with sufficient clarity that it is a request for a public record and 'give the

agency fair notice that it ha[s] received' a PRA request." *Id.* at 806 (some alteration in original) (quoting *Wood*, 102 Wn. App. at 878).

"There is no single, comprehensive definition of 'fair notice' for PRA purposes." *Id.* at 805. To assess whether a request has provided "fair notice" to trigger a duty to disclose under the PRA, Washington courts consider several factors related to the characteristics of the request and the records sought. *Id.* We examine these factors to determine whether Quarré's oral request and follow-up e-mails for copies of the permits provided SDOT with fair notice of a PRA request.

A. Characteristics of Request

"The factors relating to the characteristics of the request are (1) its language, (2) its format, and (3) the recipient of the request." *O'Dea*, 19 Wn. App. 2d at 81. Roberts assert that they submitted an in-person oral request that was clear and specific.

Roberts are correct that PRA requests may be made orally and in-person. The Washington Administrative Code specifically acknowledges that some agencies routinely accept oral public records requests and find that such requests are the best way to provide certain records. *See* WAC 44-14-03006. "The PRA does not require written requests, but it does require that the requests be recognizable as PRA requests." *Beal*, 150 Wn. App. at 876.

In assessing the characteristics of a request, "[t]he request's medium may be relevant to its clarity." *Id.* We have noted that an oral request "makes it unnecessarily difficult for citizens to prove that they in fact requested public records." *Id.* at 874-75. As this court stated in *Beal*, "[A]mbiguous oral requests

- 7 -

made during the course of meetings put[] agencies in the awkward position of contemporaneously parsing the difference between a request to collaboratively share information and a request that potentially triggers a duty to produce records or pay fines and attorney fees." *Id*. at 875.

This case exemplifies the difficulties of oral PRA requests described in *Beal*. The initial request occurred during a meeting, and the parties reported various descriptions of the request. Quarré recalled in her declaration, "When I heard that Mr. Miller would find those records, I asked Mr. Miller and Mr. Downs for copies of the records that Mr. Miller was going to find." While Morrison stated in his declaration, "On behalf of [Roberts], Ms. Quarré and I requested that City Employees provide Plaintiffs with copies of the permitting records for the eight other shoreline street ends listed in the Shoreline Street End Document." Elizabeth explained the circumstances of the request as follows:

> At the end of the meeting, Patrick [Downs] turned to Joel [Miller], who was sitting to his left, and asked if Joel could get the permitting records for the eight street ends depicted in the document we'd been discussing. Jacquie [Quarré] and Ian [Morrison] immediately asked if we could get copies of these permitting records. Patrick said that seemed reasonable, and Joel nodded in agreement.

Jonathan provided a similar description to Elizabeth's and stated, "At the end of the meeting, Pa[t]rick Downs asked Joel Miller to find the permitting records for those eight street ends, and Jacquie requested that we receive copies of these documents because she hadn't been able find them through the City Portal."

Based on the recollections of Quarré and both Elizabeth and Jonathan, the attorneys spontaneously asked for copies of permits when Downs directed Miller to research the eight SSEs. When Downs requested Miller find the permits,

Roberts capitalized on the opportunity to obtain copies. Nothing about the circumstances or the language used established a formal PRA request.

The statements from Downs and Miller speak to the casual nature of the request. Downs explained the following in his declaration in support of the City's summary judgment motion:

> During the meeting on April 3rd, I remember Ms. Quarré asked about the driveway permits for several other locations on a list she brought to the meeting. I interpreted Ms. Quarré's statements to be an informal request that SDOT investigate the permitting for these other properties and subsequently provide courtesy copies of any permits. I did not interpret her statements to be a request for records pursuant to the PRA.

In his own declaration in support of the motion, Miller indicated that he interpreted the request as a directive to investigate the permits for the other SSEs and share relevant information:

> I understood our conversation about the list Ms. Quarr[é] brought with her to be an informal process where both parties shared information back and forth cooperatively. My recollection is that I told Ms. Quarr[é] I would look into the other locations to determine if they were comparable to the Roberts' driveway site. At no point did I understand Ms. Quarr[é] to be making a PRA request on behalf of the Roberts.

Roberts' request for copies of the permits discovered during research had the character of an "ambiguous oral request[] made during the course of [a] meeting[]" rather than a clear demand that would put the City on fair notice of a PRA request. *See Beal*, 150 Wn. App. at 875.

The three follow-up e-mail messages were similarly non-specific. As one of five topics included the April 11 message, Quarré noted that Miller "was planning to find the permitting history for the SSEs following our meeting and planned to

- 9 -

share them with us," and asked, "Are those records available?" In her April 26 message, Quarré inquired as to whether SDOT had found any permitting history as discussed at the meeting. By that time, the five business day response deadline imposed by the PRA[4] had already passed, but Quarré made no mention of the City's failure to abide by the timeline in the statute. The June 19 e-mail was similarly devoid of any reference to the PRA or the significant passage of time since the alleged request. Quarré merely followed up by stating that Miller had planned to share the permitting history for the other properties and again inquired "are they available?" None of these messages put the City on notice that the previous request had been made pursuant to the PRA or informed the City that it had missed the response deadline.

Additionally, Roberts made their request for copies of the documents to an SDOT employee and an assistant city attorney, neither of whom is a public records officer. WAC 44-14-03006 expressly recognizes that

> a requestor must provide the agency with fair notice that the request is for the disclosure of public records; *oral requests, especially to agency staff other than the public records officer or designee, may not provide the agency with the required notice*.

(Emphasis added.) Downs acknowledged in his declaration that he had "some responsibilities for the City's compliance with the [PRA]" which includes "advising departments on PRA compliance and reviewing documents with department representatives in response to PRA requests." Miller also noted that he had "some

---

[4] "The PRA mandates that an agency respond to a public records request within five days of receipt, either by (1) providing the records, (2) acknowledging the request and providing a reasonable estimate of the time required to respond, or (3) denying the request." *Gronquist v. Wash. State. Dep't. of Corr.*, 32 Wn. App. 2d 617, 629, 557 P.3d 706 (2024), *review denied*, 4 Wn.3d 1011 (2025); RCW 42.56.520(1).

responsibilities for SDOT's compliance with the [PRA]" by assisting the agency's Public Disclosure Officer in determining search parameters to look for records and review whether records are relevant or responsive to a particular request. Thus, Miller and Downs were involved in PRA compliance at the time of Roberts' purported requests but did not generally receive requests for their agencies.

In this case, the characteristics of requests considered in assessing fair notice, specifically the recipient, language, and format, demonstrate only a spontaneous request for copies of permits made during an information-sharing meeting. The follow-up inquiries about the availability of those copies do not assert a PRA request or alert the City to any failure to follow the statutory deadlines. These factors support the City's claim that Roberts did not make a recognizable PRA request.

### B. Characteristics of the Records

"The factors relating to the characteristics of the records are '(1) whether the request was for specific records, as opposed to information about or contained in the records,' '(2) whether the requested records were actual public records,' and '(3) whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority.'" *O'Dea*, 19 Wn. App. 2d at 81 (quoting *Germeau*, 166 Wn. App. at 807). The City does not dispute that the permitting records are public records or that this factor weighs in favor of Roberts as a result. However, the parties disagree as to whether the City could reasonably believe the requests were made under other authority.

According to Roberts, the parties agreed that ER 408 applied to the conversations that occurred during the April 3 meeting and Quarré titled two of her e-mail messages "ER 408 . . . Follow-Up." ER 408 provides that in civil cases, "evidence of conduct or statements made in compromise negotiations is . . . not admissible." The parties agreed that the meeting and subsequent e-mail messages qualified as "compromise negotiations" for purposes of the application of ER 408. Therefore, Miller and Downs could reasonably have considered the request for copies of the permits as information sharing in the context of the negotiations, rather than a PRA request. Indeed, Downs stated in his declaration that he "understood Ms. Quarré's e[-]mails to be an informal request within the ongoing discussion about the Roberts' driveway permit application." Miller expressed a similar understanding in his declaration that the conversation about this list was "an informal process where both parties shared information back and forth cooperatively." Although not strictly "non-PRA authority," the assertion of ER 408 provided reasonable grounds for Miller and Downs to assume that Roberts asked for copies as part of the ongoing negotiations and information sharing.

The ambiguous request made in the context of continuing discussions about Roberts' driveway permit did not amount to a recognizable request for disclosure under the PRA. Based on the characteristics of the requests, Roberts did not provide the City with the requisite "fair notice." *See O'Dea*, 19 Wn. App. 2d at 80. Without fair notice, the City was not obligated to comply with the PRA. *See Germeau*, 166 Wn. App. at 811. The trial court properly granted summary judgment in favor of the City and dismissed the claim.

- 12 -

III.     Costs on Appeal

The City seeks costs on appeal under RAP 14.2.[5] RAP 14.2 provides "costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." As the prevailing party, the City may recover its costs. *See Mitchell v. Wash. State Inst. of Pub. Pol'y*, 153 Wn. App. 803, 833, 225 P.3d 280 (2009). We grant the City's request subject to its continued compliance with the procedural requirements of the RAPs.[6] *See Johnson v. City of Seattle*, 184 Wn. App. 8, 23, 335 P.3d 1027 (2014).

Affirmed.

WE CONCUR:

---

[5] The City specifically stated that it requested costs under RAP 14.2(a) which does not exist in the Rules of Appellate Procedure.

[6] Roberts seek attorney fees and costs under RCW 42.56.550(4). Because Roberts is not the prevailing party in this PRA action, we decline the request.